**Joseph D. BUTTERWORTH, Plaintiff-Appellee,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellant.**

No. 85–8769.

United States Court of Appeals, Eleventh Circuit.

Aug. 14, 1986.

Haila N.K. Coleman, Atlanta, Ga., for defendant-appellant.

Lawrence R. Gordon, Decatur, Ga., for plaintiff-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and DUMBAULD *, Senior District Judge.

* Honorable Edward Dumbauld, Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

CORRECTED OPINION

KRAVITCH, Circuit Judge:

This appeal, brought by the Secretary of Health and Human Services from the district court's reversal of the Appeals Council's decision, involves an interpretation of Social Security Administration regulations. The Appeals Council, relying on 20 C.F.R. §§ 404.987 and 404.988(a) had sua sponte reopened and revised the administrative law judge's (ALJ) decision that claimant Joseph Butterworth was disabled. The district court held that the Appeals Council's reopening of the ALJ decision violated the Secretary's regulations because it occurred more than sixty days after the date of the ALJ hearing decision which is the time limit set by 20 C.F.R. § 404.969 for the Appeals Council's own motion review of ALJ decisions. The court further held that the provisions in 20 C.F.R. §§ 404.987 and 404.988 authorizing reopening within one year of an initial determination for any reason are not to the contrary because those provisions set forth the claimants' rights to seek reopening and revision, and do not authorize the Secretary to initiate reopening. The question presented on appeal is whether 20 C.F.R. § 404.988(a) authorizes the Appeals Council to reopen an ALJ's decision on its own initiative after expiration of the sixty-day time limit for its own motion review. We find the Secretary's interpretation of the regulations reasonable insofar as he contends that both the Secretary and a claimant can invoke the authority of sections 404.987 and 404.988 to reopen decisions under proper circumstances. We therefore reverse the district court's holding that only claimants may avail themselves of the authority of section 404.988. We cannot, however, uphold the interpretation of the regulation urged by the Secretary insofar as it approves of the Appeals Council's reopening of a case which is not properly before it. For the reasons set forth below, we find this aspect of the Secretary's interpretation unreasonable and plainly inconsistent with the overall regulatory scheme. We conclude that the Appeals Council did not have jurisdiction to reopen this case, and we therefore affirm the district court's judgment remanding the case for the reinstatement of disability benefits.

I. PROCEDURAL BACKGROUND

Butterworth filed his application for a period of disability arising out of emphysema, and for disability insurance benefits under 42 U.S.C. §§ 416(i) and 423 on May 20, 1983. On June 27, 1983, the Social Security Administration (SSA) issued its initial determination and denied the claim. On July 7, it issued a reconsideration determination affirming the initial determination. Butterworth requested a hearing before an ALJ which took place September 7, 1983. On September 28, the ALJ issued a decision based on his de novo review of the record and the evidence presented at the hearing, including Butterworth's testimony. The ALJ found that Butterworth was entitled to a period of disability commencing May 11, 1983 because he could no longer perform his past relevant work and was limited to sedentary work. The ALJ found that Butterworth was fifty-eight years old at that time, had a fourth grade education, and had a work history as a drawing frame operator in a textile mill. Application of the guidelines to these factors yielded a finding of disabled. Citing Rule 201.01 of the medical-vocational guidelines, the ALJ concluded that when all relevant factors were taken into account Butterworth was disabled within the meaning of the Act.

In the notice of the ALJ decision, Butterworth was advised that, under section 404.969, the Appeals Council could, on its own motion within sixty days from the date of the ALJ decision (September 28, 1983), undertake a review of that decision which possibly could change it.[1] The notice of

---

1. This notice conforms with the procedures under 20 C.F.R. § 404.969. That section states:

**§ 404.969 Appeals Council initiates review.**
Anytime within 60 days after the date of a hearing decision or dismissal, the Appeals Council itself may decide to review the action that was taken. If the Appeals Council does

the ALJ decision further advised him that after the sixty day period the Appeals Council generally could only reopen and revise the decision under section 404.988 on the basis of new and material evidence, or if a clerical error had been made as to the amount of the benefits, or if there was an error on the face of the evidence on which the decision was based.[2]

review the hearing decision or dismissal, notice of the action will be mailed to all parties at their last known address.

2. This notice conforms generally with the procedures under 20 C.F.R. §§ 404.987, 404.988(b) and 404.989. Those sections state:

§ 404.987 **Reopening and revising determinations and decisions.**

(a) *General.* Generally, if you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated time period, you lose your right to further review. However, a determination or a decision made in your case may be reopened and revised. After we reopen your case, we may revise the earlier determination or decision.

(b) *Procedure for reopening and revision.* You may ask that a determination or a decision to which you were a party be revised. The conditions under which we will reopen a previous determination or decision are explained in § 404.988.

§ 404.988 **Conditions for reopening.**

A determination, revised determination, decision, or revised decision may be reopened—

(a) Within 12 months of the date of the notice of the initial determination, for any reason;

(b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case; or

(c) At any time if—

(1) It was obtained by fraud or similar fault;

(2) Another person files a claim on the same earnings record and allowance of the claim adversely affects your claim;

(3) A person previously determined to be dead, and on whose earnings record your entitlement is based, is later found to be alive;

(4) Your claim was denied because you did not prove that the insured person died, and the death is later established—

(i) By reason of an unexplained absence from his or her residence for a period of 7 years; or

(ii) By location or identification of his or her body;

(5) The Railroad Retirement Board has awarded duplicate benefits on the same earnings record;

(6) It either—

(i) Denies the person on whose earnings record your claim is based gratuitous wage credits for military or naval service because another Federal agency (other than the Veterans Administration) has erroneously certified that it has awarded benefits based on the service; or

(ii) Credits the earnings record of the person on which your claim is based with gratuitous wage credits and another Federal agency (other than the Veterans Administration) certifies that it has awarded a benefit based on the period of service for which the wage credits were granted;

(7) It finds that the claimant did not have insured status, but earnings for the appropriate period of time were later credited to his or her earnings record;

(8) It is wholly or partially unfavorable to a party, but only to correct clerical error or an error that appears on the face of the evidence that was considered when the determination or decision was made;

(9) It finds that you are entitled to monthly benefits or to a lump sum death payment based on the earnings of a deceased person, and it is later established that:

(i) You were convicted of a felony or an act in the nature of a felony for intentionally causing that person's death; or

(ii) If you were subject to the juvenile justice system, you were found by a court of competent jurisdiction to have intentionally caused that person's death by committing an act which, if committed by an adult, would have been considered a felony or an act in the nature of a felony;

(10) It either—

(i) Denies the person on whose earnings record your claim is based deemed wages for internment during World War II because of an erroneous finding that a benefit based upon the internment has been determined by an agency of the United States to be payable under another Federal law or under a system established by that agency; or

(ii) Awards the person on whose earnings record your claim is based deemed wages for internment during World War II and a benefit based upon the internment is determined by an agency of the United States to be payable under another Federal law or under a system established by that agency; or

(11) It is incorrect because—

(i) You were convicted of a crime that affected your right to receive benefits or your entitlement to a period of disability; or

(ii) Your conviction of a crime that affected your right to receive benefits or your entitlement to a period of disability is overturned.

§ 404.989 **Good cause for reopening.**

(a) We will find that there is good cause to reopen a determination or decision if—

Six months later, on March 1, 1984, the Appeals Council sent Butterworth a letter stating that it was reopening the ALJ's September 28th decision pursuant to section 404.988(e) [sic].[3] The letter explained that under this section a determination may be reopened for any reason within one year of the date of the initial determination (i.e. June 27, 1983). The Appeals Council then summarized certain aspects of the record and stated that it was "prepared to find that you [Butterworth] have a severe impairment which does not meet or equal the severity of any impairment found in Appendix 1, Subpart P [of the regulations]." It added that although Butterworth's impairment precluded him from doing his past relevant work, "the Appeals Council has concluded that you are 'not disabled'" under Rule 203.11 of the medical-vocational guidelines. The letter also informed Butterworth that he or his representative could submit additional evidence or a further written statement within twenty days from the date of the letter or could inform the Council within that period when additional material could be expected. It noted that it would only consider additional evidence pertaining to Butterworth's condition as of the date of the ALJ's decision. It informed Butterworth that within twenty days of the date of the letter he or his representative could request, and provide the reasons for requesting, an appearance to present oral argument to the Appeals Council. It explained that the request would be granted if the Council determined that there was a significant question of law or policy presented, or that oral argument would be beneficial in rendering a proper decision. In closing, the Appeals Council stated that if Butterworth or his representative did not contact the Appeals Council within twenty days, the Council would assume he did not want to submit anything further and would then issue its decision.

The Appeals Council did not receive a response from Butterworth to this March 1st letter. On June 29, 1984, it issued a decision reversing the ALJ decision. The Appeals Council began its decision by stating that "[t]his case is before the Appeals Council on its own motion to review the decision of the administrative law judge...." It concluded that although Butterworth had a severe respiratory impairment which precluded him from returning to past relevant work, he was still capable of performing medium work and under Rules 203.11 and 203.12 of the medical-vocational guidelines was therefore not disabled. The cover letter accompanying the Appeals Council decision informed Butterworth that if he disagreed with the decision he could file suit in federal court within sixty days.

On July 27, 1984, Butterworth wrote to the Appeals Council contending that its review of his case was legally improper.[4] On

---

(1) New and material evidence is furnished;
(2) A clerical error in the computation or recomputation of benefits was made; or
(3) The evidence that was considered in making the determination or decision clearly shows on its face that an error was made.
(b) We will not find good cause to reopen your case if the only reason for reopening is a change of legal interpretation or administrative ruling upon which the determination or decision was made.

3. In the copy of the Appeals Council's letter in the court record it appears that § 404.988(e) was originally typed and then a correction was handwritten over it to indicate § 404.988(a) or (c). It is less than clear. In the letter from Butterworth's representative to the Appeals Council, he also refers to § 404.988(e). Because both parties' subsequent arguments indicate that the intended reference was to subsection (a), hereinafter references to 404.988(e) will be treated as clerical errors arising out of the original typographical error and will be read as 404.988(a).

4. Butterworth also argues that even if the Secretary were correct as to the legality of the Appeals Council reopening this case, the cover letter accompanying the Appeals Council decision provided false information of his right to further review. The letter informed him that if he disagreed with the decision he would have to file suit in federal court within sixty days to obtain review. Butterworth points to 20 C.F.R. § 404.993 which indicates that a claimant can file a written request for a hearing on, or for Appeals Council review of, a revised decision, or the revised decision can be further revised. We find that Butterworth raises a significant question as to the accuracy of the notice. In light of

August 1, 1984, Butterworth filed a complaint in federal district court claiming *inter alia,*[5] that "[i]n utilizing 20 C.F.R. 404.-988(e) [sic] to reopen the ALJ's decision, the Appeals Council did not properly and legally apply the specific Regulation which permits Appeals Council review." The case was referred to a magistrate for review and recommendation.

The magistrate's report rejected the arguments set forth by Butterworth. The magistrate disagreed with Butterworth's contention that the Appeals Council's use of the words "own motion to review" in the preface of its June 29 decision precluded it from claiming authorization for its action under the reopening provisions of section 404.988(a), and instead required it to be bound by the section 404.969 procedures for Appeals Council own motion review. The magistrate found that the language of the earlier March 1 letter from the Appeals Council to Butterworth had clearly put Butterworth on notice that the Appeals Council was invoking the authority of 20 C.F.R. § 404.988(a) to support its reopening of the case. The magistrate also rejected Butterworth's contention that the Appeals Council could not reopen and revise the ALJ decision because the Secretary had not established good cause for reopening. The magistrate concluded that a showing of good cause is required under section 404.-988(b) not under section 404.988(a). The magistrate found unpersuasive Butterworth's argument that the Appeals Council was not authorized to reopen an ALJ final decision which it had not previously reviewed. The magistrate reasoned that the language of section 404.988 indicated that a decision could be reopened regardless of whether it had previously been reviewed. The magistrate, nevertheless, recommended that the Appeals Council's decision be reversed.

The magistrate concluded that the reopening authority of section 404.987 is limited to claimants and therefore the Appeals Council's initiation of the reopening and revising process was improper. The magistrate reasoned that the language of sections 404.987 and 404.988 clearly indicates that they are meant for exclusive use by the claimant. He emphasized the contrast between the language directed to the claimant in sections 404.987 and 404.988 and the language directed to the Secretary's authority in section 404.969. In support of his reasoning, the magistrate cited *Silvis v. Heckler,* 578 F.Supp. 1401 (W.D.Pa.1984) in which another district court held that the analogues to sections 404.987 and 404.988 contained in the regulations governing Supplemental Security Income were limited to claimants, and *Hughes v. Heckler,* No. C83–185R (N.D.Ga. March 6, 1984), an unpublished opinion in which the district court held that the Secretary could not proceed under section 404.988(a) after expiration of the sixty-day limitation of section 404.969. The magistrate specified that he disagreed with the contrary authority of *Munsinger v. Schweiker,* 709 F.2d 1212 (8th Cir.1983). He concluded that the *Munsinger* court's holding that the reopening provisions of sections 404.987 and 404.988 were available to both the claimants and the Secretary was based on consideration of those sections in isolation and was inconsistent with the overall context of the regulatory scheme in which they are contained. The magistrate reasoned that the *Munsinger* rationale renders meaningless the sixty-day limitation which section 404.969 places on Secretary initiated review of ALJ decisions.

The Secretary filed timely objections to the magistrate's report reiterating his position that both the claimant and the Secretary can avail themselves of sections 404.-987 and 404.988, and that the reopening procedure followed in this case was autho-

---

our disposition of Butterworth's claim, however, we need not resolve this issue.

**5.** Butterworth also claims in his federal suit that there was not substantial evidence to support the Appeals Council's decision. The magistrate's report adopted by the district court below

did not consider this contention because of its invalidation of the Appeals Council's decision on other grounds. In light of our disposition of Butterworth's other argument, we need not reach this claim either.

rized by these regulations. Butterworth filed a response, emphasizing that the defect in the Appeals Council's action in the instant case was that the case was not properly before that administrative level at the time of the reopening and therefore the Appeals Council did not have jurisdiction to reopen the case. Butterworth recognized, however, that the Secretary was correct in that the SSA as well as a claimant can use the reopening and revision procedure, but only in cases properly before that administrative level. Butterworth stated that the magistrate's "claimant only" restriction should be limited to actions under sections 404.988(a) and 404.988(b) and that the proper administrative level of the SSA could utilize section 404.988(c).

On July 23, 1985, the district court entered an order adopting the magistrate's report in full, reversing the decision of the Appeals Council, and ordering remand of the case for the reinstatement of disability benefits. The Secretary appeals from that order. He reasserts his two-fold argument that the Secretary can initiate the reopening of cases in appropriate circumstances, and that the Appeals Council's reopening of the ALJ decision in the instant case was appropriate. Butterworth defends the magistrate's judgment first on the basis of the magistrate's reasoning. He also presents, as an alternative, his original argument rejected by the magistrate to the effect that even if the Secretary does have the authority to reopen cases, the Appeals Council did not properly exercise such authority in the instant case because Butterworth's case was not properly before it at the time of reopening.

## II. REOPENING v. REVIEWING

We are mindful that our review in this case must be tempered by the deference due an administrative agency's interpretation of its regulations. *United States v. Larionoff,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). This court has stated that an "agency's view must be upheld unless it is so plainly erroneous or so inconsistent with either the regulation or the statute authorizing the regulation that its decision is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.... As long as the agency's interpretation is reasonable, a reviewing court cannot overrule it even though other interpretations might strike the court as more reasonable." *Southern Georgia Natural Gas Co. v. FERC,* 699 F.2d 1088, 1090 (11th Cir.1983). There is no dispute in this case that the SSA regulations at issue were properly promulgated in accordance with the general rulemaking authority granted to SSA under 42 U.S.C. § 405. Nevertheless the court below found that the interpretation urged by the Secretary in this case could not be upheld because it was inconsistent with the overall regulations. We share the district court's concern that to adopt the Secretary's view of section 404.988 would be to render meaningless section 404.969. We do not agree, however, that it necessarily follows that sections 404.987 and 404.988 do not provide the Secretary with any authority to reopen and revise cases on his own initiative. Rather, we conclude that the Secretary's interpretation of the regulations is clearly reasonable to the extent that it reads sections 404.987 and 404.988 as authorizing both a claimant and the Secretary to initiate the reopening of a case. We reject the Secretary's interpretation, however, at the point where the Secretary reads the reopening provision of section 404.988(a) as supplanting the time limitation which section 404.969 places on Appeals Council review of ALJ decisions.

### A. *The Secretary's Authority to Reopen and Revise*

The Secretary argues that the district court's conclusion that only a claimant may initiate reopening of a decision under sections 404.987 and 404.988 is simply illogical. He points to the longstanding history of the reopening regulations serving as a means whereby the Secretary as well as a claimant could obtain revision of an otherwise final administrative decision so that error in the decision could be corrected. He asserts that the district court failed to

recognize the fundamentally different purposes of Appeals Council own motion review of ALJ decisions under section 404.969 and the reopening of a final decision under sections 404.987 and 404.988. The Secretary contends that the purpose of the own motion review procedure is to fix the time at which the ALJ's decision becomes final, whereas the purpose of the reopening procedure is to correct error in an otherwise final decision. He states that reopening is an extraordinary measure and is available under more restrictive criteria than review. He illustrates that the two procedures have co-existed in the regulatory scheme since 1949. Finally, he argues that the district court erred in rejecting the *Munsinger* analysis. The Secretary emphasizes that opinion's reasoning that exclusive access to reopening proceedings by a claimant is unrealistic in light of several of the conditions for reopening listed therein which apply to situations in which it is very probable that benefits would be reduced or eliminated and would therefore be raised by the Secretary rather than a claimant.

Butterworth defends the district court's "claimants only" view of sections 404.987 and 404.988(a). His argument follows the reasoning of the magistrate's report. He relies on the language of the section which is directed to "you" the claimant being able to request reopening and revision of a case. Butterworth adds to the analysis, however, in an attempt to reconcile this interpretation with the fact that ALJs often reopen cases without a claimant request being filed. He contends that pursuant to the ALJ's responsibility for ensuring fairness to unrepresented claimants who could not be expected to understand the regulation, the Secretary has authority to reopen a case based upon an implied request by the claimant, that is, whenever reopening would benefit the claimant.

It is clear from a reading of the regulations in their entirety that the Secretary's interpretation on this point is a reasonable reading of sections 404.987 and 404.988. As the *Munsinger* court pointed out, section 404.988, which lists the conditions in which a case may be reopened, includes in subsection (c) several conditions which only the Secretary would raise. *See, e.g.*, 20 C.F.R. §§ 404.988(c)(1) (the determination or decision was obtained by fraud or similar fault); 404.988(c)(5) (duplicate benefits were awarded); 404.988(c)(11) (the determination or decision is incorrect because claimant was convicted of a crime that affected his or her right to receive benefits). The language in the section directed to "you" the claimant does not undermine this conclusion. The direct references to the individual claimant were adopted in the 1980 recodification in an effort to make the regulations clearer and easier for the public to use. *See* 45 Fed.Reg. 52078. This language does not include any statement that reopening by the Secretary is precluded. To the contrary, the regulations also include first-person references to the SSA in statements such as "[a]fter we reopen your case, we may revise the earlier determination or decision." The use of such wording without any limiting language further supports the Secretary's views on the matter.

█ The weakness of Butterworth's argument is highlighted by the fact that he did not present this argument to the magistrate. In fact, he acknowledged the reasonableness of the Secretary's position in both his response to the Secretary's objections to the magistrate's report and in his supplemental brief filed with this court. We conclude therefore that sections 404.987 and 404.988 establish conditions under which the Secretary as well as the claimant is authorized to initiate the reopening of a case. This conclusion does not, of course, dispose of this case. Butterworth maintains that in this particular case, the Appeals Council did not have jurisdiction to exercise such authority.

## B. *The Jurisdiction of SSA Component Levels to Reopen and Revise*

The SSA regulations pertaining to reopening and revising as well as those pertaining to administrative review are con-

tained in Subpart J of 20 C.F.R. Part 404. The introductory section to Subpart J describes the various component levels of the SSA involved in administrative review and identifies the four levels of administrative rulings on a claim—an initial determination, a reconsideration determination, an ALJ decision, and an Appeals Council decision. 20 C.F.R. § 404.900. The administrative review regulations are then grouped under different headings to set forth the procedures to be followed at each of these component levels. The reopening and revising regulations are not presented in this format and do not distinguish between procedures at the various component levels although section 404.987's references to reopening "determinations"[6] and "decisions"[7] indicate that any of the four levels of rulings may be reopened. *See also* §§ 404.905, 404.920, 404.955, 404.981 (describing binding effect of each level of ruling unless appealed or various other actions taken including in each case, the revision of the ruling). The reopening and revising regulations do not specify, however, which component level within the SSA has jurisdiction to reopen the various levels of rulings. Rather, these regulations are written in general terms of when "we" may reopen and revise a previous determination or decision. Section 404.901 simply explains that for purposes of Subpart J, " '[w]e,' 'us,' or 'our' refers to the Social Security Administration."

Butterworth contends that a reading of the regulations in context indicates that a final ruling—whether a determination or a decision—may be reopened and revised only by a component level which has jurisdiction over the case. He asserts that a common sense reading of the regulation indicates that this jurisdiction has two elements. First, appropriate conditions as listed in section 404.988 must exist, and second, the case must be properly before that particular component level before it may exercise reopening authority. Butter-

worth points out that there are several methods by which a decision may be properly before the Appeals Council. The claimant may take the case to the Appeals Council requesting review, 20 C.F.R. § 968; the Appeals Council may take the case on its own motion review, 20 C.F.R. § 969; or the Appeals Council may have assumed responsibility for holding a hearing in lieu of the ALJ, 20 C.F.R. § 956. We also note that under section 404.995 the Appeals Council may have a case properly before it if it is deciding a second claim based on the same earnings record. Revision even in these situations would of course be limited to the conditions stated in section 404.988.

The Secretary presents several arguments in response to this interpretation. First he refers to the district court's characterization of Butterworth's argument as simply asserting that jurisdiction to reopen a case under section 404.988 requires a previous review under section 404.969. The Secretary argues that the district court properly rejected this argument, and emphasizes that acceptance of the argument would undercut the distinct and independent purposes of reopening as opposed to reviewing. The Secretary's argument here misses the thrust of Butterworth's analysis. Butterworth's theory does not indicate that an ALJ decision that is not reviewed within sixty days cannot be reopened. It merely indicates that once the Appeals Council deferred from taking jurisdiction over his case by allowing sixty days to pass without invoking its own motion review, and because Butterworth did not take his case to the Appeals Council seeking review, the Appeals Council did not have jurisdiction to reopen this ALJ decision. The analysis does not suggest that the ALJ decision cannot be reopened by the ALJ. Butterworth unequivocally acknowledges that the ALJ decision could have been re-

---

6. Section 404.901 explains that for purposes of Subpart J, " '[d]etermination' means the initial determination or the reconsidered determination."

7. Section 404.901 explains that for purposes of Subpart J, " '[d]ecision' means the decision made by an administrative law judge or the Appeals Council."

opened and revised by the ALJ beyond the sixty day period.

The Secretary's argument in opposition to Butterworth's analysis is aimed at undercutting Butterworth's contention that section 404.969 provides the only restraint from the reopening of determinations or decisions by inappropriate administrative components. Although we agree with the Secretary that Butterworth's prediction of the consequences which would result if the Secretary's interpretation is adopted contains implausible hypotheticals, we do not find that this lends any support to the Secretary's position. We simply reject that aspect of Butterworth's argument and do not rely on it to reach our conclusion in this case.

 The Secretary next contends that a provision in SSA's Program Operations Manual System (POMS) plainly states that reopening lies "with the component which made the final determination or the next higher level of authority." We find several problems with this argument. First, it relies on evidence that is not part of the record. None of the excerpts from the SSA manual, handbook, or policy statements which are attached as appendices to the Secretary's appellate briefs were presented to the court below. This court generally will not consider material that has not been considered by the court below, especially when a party has submitted such material without requesting leave to do so or filing a motion to supplement the record. *See Harris v. United States,* 768 F.2d 1240, 1242 (11th Cir.1985); *Mitchell v. Trade Winds Co.,* 289 F.2d 278, 279 (5th Cir.1961). Moreover, only excerpts from the manual and handbook have been submitted and sections which are cross-referenced in these excerpts which may be relevant are not before this court.[8] In this case, however, Butterworth has not objected to the submission of the material, but in fact argues that portions of the material

support his position rather than the Secretary's. The convergence of the parties' position on the use of the material is a factor to consider. *See Erkins v. Bryan,* 663 F.2d 1048, 1052 (11th Cir.1981), *cert. denied,* 459 U.S. 989, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982). We find, however, that even the portions submitted by the Secretary support Butterworth's analysis. This leads to our second problem with this line of argument. The Secretary's characterization of the POMS provision is misleading—it does *not* plainly state that "reopening lies within the component which made the final determination *or the next higher level of authority.*" (Emphasis added). The provision to which the Secretary cites and which is included in Appendix I to his brief states in relevant part:

The term "SSA" means the component within SSA (and the job position(s) within that component) which has jurisdiction over the reopening. The component (and job position(s)) which has the authority to reopen is the component (and job position(s)) which made the determination that has become final and that is being reopened *or the component (and job position(s)) which has the authority to review and, if necessary, revise the determination.* Examples of components within SSA include DO, RO, PSC, DDS, CO, ALJ, and AC. Examples of job positions include benefit authorizer, claims representative, claims authorizer, and reconsideration reviewer. (Emphasis added).

This language supports Butterworth's analysis of the elements necessary for a component level's jurisdiction over a case— the case must be properly before that level either because it made the ruling that is being reopened or because it is a component that has the authority to review, and, if necessary revise the determination. Section 404.969 makes it clear that once sixty

---

8. We are concerned that such a submission would unduly prejudice a claimant in most instances since the Secretary is in the unique position of having ready access to the materials describing SSA's internal operating procedures and a claimant in the midst of an appellate briefing schedule does not have adequate opportunity to rebut such materials or to place it in its proper context.

days elapses after an ALJ decision, the Appeals Council no longer has the authority to review that decison. Another problem with this argument is the Secretary's assertion that the SSA clearly intended to apply the term "review" in this provision in its more general sense rather than in the specific manner discussed in section 404.-969. We find this assertion unreasonable in light of the special meaning which is given to this term and many others throughout the SSA regulations, manual, and handbook. The other POMS provision which relates to Supplemental Security claims and which the Secretary cites as analogous is even more consistent with Butterworth's analysis. This provision as included in the Secretary's Appendix R states in relevant part:

> After the expiration of the time limits for the regular appellate processes ..., an initial, reconsidered or revised determination, or a decision or revised decision of an ALJ or the AC may be reopened and revised, under the conditions described in GN 04070.030, at the same appellate level which had made the last determination or decision on the claim *or at a higher level which has the claim properly before it.* (Emphasis added).

This provision makes clear that a higher level cannot reopen a case in every instance but only when the claim is properly before that level.

Finally, the Secretary cites to provisions in the manual and in the Office of Hearing and Appeals Handbook which state that only an ALJ and Appeals Council may reopen an ALJ decision, and only the Appeals Council may reopen an Appeals Council decision. This is already apparent from the regulations. Section 404.955 clearly indicates that an ALJ decision can be revised by an ALJ or the Appeals Council. As the Secretary points out, the manual and handbook provisions read within the context of the accompanying provisions and examples are intended to clarify that a lower level component cannot reopen a ruling of a higher level. This is a reasonable interpretation of the regulations read within the context of the regulatory framework. We

therefore reject any implication in Butterworth's argument to the contrary. These provisions do not, however, in any way indicate that the Appeals Council can reopen an ALJ decision which is not properly before it. Hence, the interpretation of the SSA regulations urged by the Secretary in this case appears unreasonable in light of the agency's own prior interpretations.

The central flaw throughout the Secretary's argument is his persistence in equating the term Social Security Administration with the Appeals Council. A reading of the regulations in their entirety simply does not support the position that the Appeals Council can at any point in the administrative process invoke the authority which any of the other SSA components may have. The manner in which the regulations are drafted as well as the structure of the review process supports the interpretation of the reopening authority as applying at each different level. Butterworth's interpretation on the other hand is reconcilable with the pertinent case law as well as the Secretary's concern for the efficient administration of the Social Security program. Butterworth succinctly explains why the *Munsinger* court's reasoning cannot be dispositive in this case. *Munsinger* dealt solely with the general authority of the Appeals Council without considering whether the Appeals Council had jurisdiction to exercise such authority. Butterworth's analysis also addresses the concern which caused several courts to restrict the reopening and revising regulations to claimants only. He points out that the apparent conflict between section 404.969 and section 404.988 can be resolved by a less drastic means. Section 404.969 merely serves as a jurisdictional prerequisite to the Appeals Council's exercise of its reopening and revising authority. Butterworth argues that this construction of the regulations is consistent with general principles of statutory construction to the effect that a specific statute will not be nullified by a more general statute. *See Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976);

*United States v. Chase,* 135 U.S. 255, 260, 10 S.Ct. 756, 757, 34 L.Ed. 117 (1890). While acknowledging that these principles do not necessarily carry over wholesale to regulatory interpretation, Butterworth argues that their application to the regulations at issue in this case points up the unreasonableness of the Secretary's position. Butterworth presents an interpretation that lies between the *Munsinger* rationale and the "claimant only" cases. It appears to be the only alternative consistent with the overall regulatory framework.

As a final note, we address the Secretary's assertion that an affirmance of the district court's decision will have serious adverse consequences for the administration of the SSA program. The Secretary argues that he will be precluded from correcting the inevitable errors which occur and will be unduly restricted in carrying out his charge to administer the program and safeguard the trust fund. Nothing in our decision today could reasonably be expected to have such dire consequences. The Secretary himself characterizes reopening as an extraordinary remedy that is applied much less frequently than administrative review. He clearly states that reopening is to correct errors and serves a narrower purpose than appellate review.[9] In any event, we have not held that the Secretary is precluded from initiating the reopening and revising of cases. We have only given section 404.969 its necessary force and recognized that it limits somewhat the reopening jurisdiction of the Appeals Council. The Appeals Council is free to review ALJ decisions on its own motion review in accordance with the requirements of section 404.969.[10] Even where the Appeals Council is limited, the ALJs are still free to reopen and revise ALJ decisions where the other appropriate conditions exist. Furthermore, the Secretary always has available to him the administrative procedures through which he can institute proceedings to terminate payment of benefits to someone if the evidence now shows that the individual's condition is improved from that presented in his or her original disability benefits case so that he or she does not meet the disability standard and is improperly receiving benefits. 42 U.S.C. § 1383(a)(5). *See Simpson v. Schweiker,* 691 F.2d 966, 969 (11th Cir.1982).

## CONCLUSION

For the reasons set forth above, we hereby AFFIRM the judgment of the district court remanding this case for reinstatement of disability benefits.

---

**9.** The Appeals Council's use of the "own motion review" introduction in its decision in Butterworth's case suggests that the distinction between the purpose of administrative review and reopening is not apparent to all decisionmakers within the SSA. While this might be dismissed as bureaucratic confusion, we also note as did Butterworth's representative that the first page of both the Appeals Council's decision and its cover letter are stamped "Bellmon Case." Section 304(g) of the Social Security Disability Amendments of 1980, Pub.L. No. 96–265, 94 Stat. 441, known as the Bellmon Amendment, directed the Secretary to implement a program for own motion review of ALJ decisions, one of the purposes of which was to effectuate uniformity in decisions of ALJs. *See* H.R.Conf. Rep. No. 944, 96th Cong.2d Sess. 57–58, *reprinted in* 1980 U.S.Code Cong. & Ad.News 1277, 1392, 1405–06. Hence, the Bellmon stamp combined with the "own motion" language indicate that the Appeals Council could have been performing an own motion review of Butterworth's case under the guise of a reopening. Our reading of the regulations would clearly prohibit such action. Because reopening and revision alters an already final decision, it is inappropriate to use it to effectuate broader SSA policy goals which Congress intended to be handled by administrative review of nonfinal decisions.

**10.** This court's recent en banc opinion in *Parker v. Bowen,* 788 F.2d 1512 (11th Cir.1986), upheld the Secretary's interpretation of the own motion review regulations as authorizing the Appeals Council's discretionary review of ALJ decisions, not limited to those within the four categories enumerated in § 404.970(a).