RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0209p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

WILLIAM FERRIELL,

　　　　　　*Plaintiff-Appellant,*

　　　　*v.*

COMMISSIONER OF SOCIAL SECURITY,

　　　　　　*Defendant-Appellee.*

No. 09-5597

_____

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 07-00696—Edward H. Johnstone, District Judge.

Decided and Filed: July 20, 2010

Before: KENNEDY, ROGERS, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Julie Atkins, ATKINS LAW OFFICE, Harlan, Kentucky, for Appellant. J. Patrick Powers, Mary Ann Sloan, Dennis R. Williams, Douglas G. Wilson, Brian Seinberg, SOCIAL SECURITY ADMINISTRATION, OFFICE OF THE GENERAL COUNSEL, Atlanta, Georgia, James H. Barr, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee.

_____

**OPINION**

_____

　　KENNEDY, Circuit Judge. In this social security case, Plaintiff seeks review of the Appeals Council's decision that he is not entitled to receive disability benefits. Because we find that the decision in Plaintiff's case was entered pursuant to the Appeals Council's authority to reopen and revise the decisions of an administrative law judge, and that the procedures used did not violate Plaintiff's right to due process, we AFFIRM the district court's ruling upholding the Appeals Council's decision.

**FACTUAL AND PROCEDURAL BACKGROUND**

On May 17, 2005, William Ferriell submitted an application for social security disability benefits, claiming that ailments in his back and lungs had rendered him disabled since August 1, 1998. Ferriell had worked full-time as an auto mechanic from 1964 through 1998, but had not held a full-time job since 1998. His application was initially denied on August 10, 2005, then denied on reconsideration on November 21, 2005.

Ferriell requested and was granted a hearing before an administrative law judge ("ALJ"). ALJ Patrick Kimberlin convened a hearing in Ferriell's case on January 17, 2007, but decided to reschedule it once Ferriell's representative presented him with amended tax returns for 1999 and 2000 that she asserted would push back Ferriell's date last insured. A full hearing was held on February 26, 2007, during which the ALJ indicated he had "recalculated" Ferriell's date last insured as December 31, 2005, rather than the December 31, 2003 date established during the initial determination. After this pronouncement and the conclusion of Ferriell's testimony, Ferriell's representative stated that Ferriell wished to amend his onset date to May 17, 2005, the date of his application. The ALJ accepted the amendment, and on April 19, 2007 he issued a decision fully favorable to Ferriell, concluding that Ferriell was entitled to disability benefits beginning on May 17, 2005.

On June 27, 2007, the Assistant Regional Commissioner for Processing Center Operations from the Southeastern Program Service Center referred Ferriell's case to the Office of Disability Adjudication and Review ("ODAR"). The referral stated that Ferriell's earning records indicated he did not have enough periods of covered social security income to qualify for benefits on May 17, 2005, though he would have enough covered income to qualify for benefits based on an August 1, 1998 onset date. The Assistant Regional Commissioner recommended that the Appeals Council initiate own-motion review or reopen and revise Ferriell's case to investigate the issue.

On September 14, 2007, the Appeals Council notified Ferriell via letter that it was reopening and revising the hearing decision in his case. The letter explained that the Appeals Council had authority to revise Ferriell's decision because less than four years had passed from the initial determination and "good cause" to reopen existed since the evidence considered by the ALJ clearly showed that there was an error. The letter went on to state

that the Appeals Council planned to enter a decision that Ferriell was not entitled to disability benefits as of May 17, 2005 because a "transpositional error" had caused the ALJ to record his date last insured as December 31, 2005 instead of December 31, 2003. The letter concluded by indicating that Ferriell had thirty days to present a statement of the law and facts of his case, new evidence, and/or a request to appear before the Appeals Council prior to the entry of its final decision in his case. Ferriell's representative responded to the Appeals Council's notice by sending a letter to the Appeals Council arguing that Ferriell's December 31, 2005 date last insured was justified by amended tax returns for the years 1999 and 2000, which Ferriell had submitted to the IRS in 2006 in order to report additional self-employment income. Nevertheless, on November 20, 2007, the Appeals Council issued a decision unfavorable to Ferriell. It rejected Ferriell's argument for an extension of his date last insured, citing section 205(c)(4)(C) of the Social Security Act, 42 U.S.C. § 405(c)(4)(C), as precluding the retroactive crediting of self-employment income after a certain time period had elapsed. Since this cut-off date was April 15, 2003 for self-employment income from 1999, and April 15, 2004 for 2000 income, the Appeals Council concluded that Ferriell had not submitted his amended returns in time to be given credit for the self-employment earnings recorded therein. It found that Ferriell's date last insured was December 31, 2003 and, as there was no evidence of disability prior to 2005, that he was not entitled to disability benefits.

Ferriell sought judicial review of the Appeals Council's decision in the United States District Court for the Western District of Kentucky, arguing that the Appeals Council was time-barred from considering his case and that the Appeals Council's decision denied him due process. The district court affirmed the Appeals Council, and Ferriell timely appealed to this court.

**DISCUSSION**

Ferriell's brief does not contest the substance of the Commissioner's ruling in his case, but does object to the procedures through which he was determined ineligible for disability benefits. Specifically, he asserts that Social Security Administration ("SSA") regulations make the Appeals Council's action in his case untimely, and that he was denied due process in the determination of the onset date of his disability. The district court denied

both of these claims, but we review a district court's conclusions in a social security case *de novo*. *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005). We consider each issue in turn.

**I. Timeliness of Appeals Council's Action**

Ferriell first argues that his case was not properly before the Appeals Council when it overturned the ALJ's ruling in his favor, which fact deprived it of jurisdiction to reopen and revise the ALJ's decision. To evaluate his contention as it applies to this case, we must examine the SSA procedures that allow the Appeals Council to alter an ALJ's disability decision on its own motion.[1] Under regulations providing for the direct review of ALJ decisions, the Appeals Council may initiate review of a "hearing decision or . . . dismissal of a hearing request," 20 C.F.R. § 404.967, "[a]nytime within 60 days after the date of a decision or dismissal," *id.* § 404.969(a). "The Appeals Council's decision to review a case is established by its issuance of the notice of review," *id.* § 404.969(d), which is a notice mailed to all parties "stating the reasons for the review and the issues to be considered," *id.* § 404.973. The Appeals Council will review a case if: "(1) [t]here appears to be an abuse of discretion by the [ALJ]; (2) [t]here is an error of law; (3) [t]he action, findings or conclusions of the [ALJ] are not supported by substantial evidence; or (4) [t]here is a broad policy or procedural issue that may affect the general public interest." *Id.* § 404.970(a).

In addition to the direct review procedures, SSA regulations allow the SSA to reopen and revise some decisions that are otherwise final and binding on its own initiative. *Id.* § 404.987. A decision may be reopened "[w]ithin four years of the date of the notice of the initial determination" on a finding of "good cause." *Id.*

---

[1]The regulations governing direct review by the Appeals Council and the reopening of decisions and determinations also give claimants the opportunity to initiate review or reopening. *See* 20 C.F.R. §§ 404.967, 404.968, 404.987(a). As this case does not involve claimant-initiated proceedings, we have framed our opinion in terms of the Appeals Council's own-motion authority for ease of exposition only; we note that our holding is not meant to restrict a claimant's ability to seek Appeals Council review under the direct review or reopening procedures.

§ 404.988(b).**²** "Good cause" to reopen a decision exists if: "(1) [n]ew and material evidence is furnished; (2) [a] clerical error in the computation or recomputation of benefits was made; or (3) [t]he evidence that was considered in making the determination or decision clearly shows on its face that an error was made." *Id.* § 404.989(a).

The Appeals Council revised Ferriell's case more than sixty days after the ALJ's decision, so its action must be authorized by the reopening procedures in order to be lawful under SSA regulations. Ferriell asserts that the Appeals Council cannot reopen an ALJ's decision unless the case is properly before it, that is, unless it had previously asserted its jurisdiction over the case under the review procedures. In other words, he contends that the Appeals Council's failure to initiate review of his case within the sixty-day time limit acts as a jurisdictional bar to its authority to reopen it. The Commissioner advances an alternative interpretation: The Appeals Council can reopen an ALJ's decision pursuant to the reopening procedures regardless of whether it had undertaken review proceedings within the sixty-day period. Under this view, direct review of an ALJ's decision is a completely separate process from the reopening of an ALJ's decision, and the Appeals Council has authority to do either as long as it acts in accordance with the regulations governing its chosen procedure.

The correct interpretation of the Appeals Council's authority to reopen ALJ decisions after more than sixty days has not been definitively determined in this circuit. In *Fox v. Bowen*, 835 F.2d 1159 (6th Cir. 1987), this court upheld the Appeals Council's authority to reopen a disability decision more than one year after the ALJ's initial decision, based on a showing of "good cause" under 20 C.F.R. § 404.988(b). This holding supports the Commissioner's interpretation of the direct review and reopening procedures, but it does not foreclose Ferriell's argument. First, the court in *Fox* did not consider nor decide the specific issue in this case, namely, whether the direct review

---

**²**A decision or determination may also be reopened "[w]ithin 12 months of the date of the notice of the initial determination, for any reason," 20 C.F.R. § 404.988(a), or "[a]t any time" if it involves certain enumerated circumstances, *id.* § 404.988(c). As neither party argues that these provisions provide grounds to reopen the decision in Ferriell's case, we focus on § 404.988(b).

procedures create a jurisdictional limitation on the Appeals Council's reopening authority.  Therefore, a holding in Ferriell's favor on this issue would not be precluded by our published decision in *Fox*.  *See* 6th Cir. R. 206(c) ("Reported panel opinions are binding on subsequent panels.").  Second, since the decision in *Fox*, the SSA has amended 20 C.F.R. § 404.969 governing own-motion review by the Appeals Council in a manner that speaks to the Appeals Council's power under the reopening provisions.  No panel of this court has yet to construe the new regulation's impact on the reopening procedures.  For these reasons, we proceed to examine the direct review and the reopening regulations in order to determine if there is reason to deviate from the result in *Fox*.

Before beginning our analysis, we note that we do not start with a blank slate.  An agency's interpretation of its regulations must be considered, even on pure legal questions such as this one.  *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 338 (6th Cir. 1989); *see also MCI Telecomms. Corp. v. Ohio Bell Tel. Co.*, 376 F.3d 539 (6th Cir. 2004).  The SSA's interpretation of the regulations at issue is entitled to substantial deference; it will be upheld unless plainly erroneous or inconsistent with the regulations. *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549–50 (6th Cir. 2004).

The basis for Ferriell's argument is a potential ambiguity in the reopening regulations, which do not explicitly specify which component level of the SSA possesses the authority to reopen and revise a final decision or determination.  The reopening provisions use the general terms "we," "us," and "our" to describe who has authority to reopen a decision.  *See, e.g.*, 20 C.F.R. § 404.987 ("[A] determination or decision made in your case which is otherwise final and binding may be reopened and revised by us. . . . We may reopen a final determination or decision on our own initiative . . . ."); *id.* § 404.989 ("We will find that there is good cause to reopen a determination or decision if . . . .").  Since "we," "us," and "our" refer simply to the SSA, *id.* § 404.901, the reopening regulations seem neither to provide guidance nor to place limits on which level of the SSA may invoke the reopening procedures.  In fact, this led the Eleventh

Circuit in *Butterworth v. Bowen*, 796 F.2d 1379 (11th Cir. 1986), to adopt the interpretation of the reopening procedures advanced by Ferriell.  The court upheld the petitioner's argument that:

> [A] reading of the regulations in context indicates that a final ruling—whether a determination or a decision—may be reopened and revised only by a component level which has jurisdiction over the case. . . . First, appropriate conditions as listed in section 404.988 must exist, and second, the case must be properly before that particular component level before it may exercise reopening authority. [T]here are several methods by which a decision may be properly before the Appeals Council[,] . . . [for example it] may take the case on its own motion review . . . .

*Id.* at 1386.

However, the SSA has on several occasions advanced an interpretation of the reopening provisions that rejects Ferriell's reading in favor of the Commissioner's.  After the decision in *Butterworth*, the SSA promulgated an Acquiescence Ruling disapproving of the decision as "contrary to SSA policy" and specifying that it applies "only to decisions at the Appeals Council level and only to cases in which the claimant resides in Alabama, Florida, or Georgia at the time of the Appeals Council's review."  Social Security Acquiescence Ruling 87–2(11) (May 1, 1987), *available at* http://www.ssa.gov/OP_Home/rulings/ar/11/AR87-02-ar-11.html, *rescinded*, Rescission of Social Security Acquiescence Ruling 87–2(11), 63 Fed. Reg. 36,726 (July 7, 1998).  It described its interpretation of the reopening provisions as follows:

> 20 C.F.R. [§§] 404.987–404.995 . . . use the word "we" to signify SSA components, including the Appeals Council, and thus vest the authority to reopen and revise in the Appeals Council as well as in other SSA components.  Therefore, under SSA policy, the Appeals Council may reopen and revise any ALJ or Appeals Council decision if the procedures and conditions set forth in 20 C.F.R. [§§] 404.987 and 404.988 . . . are met.  *Such actions are subject only to the time limits found in those provisions and not the time limits of any other regulations.*

*Id.* (emphasis added).

More importantly, in 1998 the SSA amended 20 C.F.R. § 404.969 governing the Appeals Council's own-motion review procedures, and included language with which it sought to codify its interpretation of the Appeals Council's authority under the reopening provisions. Section 404.969 now contains four subsections, the last of which references 20 C.F.R. §§ 404.987 and 404.988:

> (d) *Appeals Council's action.* If the Appeals Council decides to review a decision or dismissal on its own motion, it will mail a notice of review to all the parties as provided in § 404.973. . . . The Appeals Council's decision to review a case is established by its issuance of the notice of review. If it is unable to decide within the applicable 60-day period whether to review a decision or dismissal, the Appeals Council may consider the case to determine if the decision or dismissal should be reopened pursuant to §§ 404.987 and 404.988.

§ 404.969(d). The SSA's statement accompanying the final rule amending § 404.969 sheds light on the purpose of the regulation's reference of the reopening provisions. Its summary of § 404.969(d) reads in part:

> Section[] 404.969(d) . . . also state[s] our policy that when the Appeals Council is unable to decide whether to review a case on its own motion within the 60-day period in which it may do so, it may consider whether the decision should be reopened under . . . [§] 404.987 . . . , which authorize[s] the Council to reopen a decision that has become administratively final on its own initiative or at the request of a party to the decision, if a condition for reopening stated in [§] 404.988 . . . is present. *Inclusion of this statement in the regulations clarifies our long-standing policy that the Appeals Council may also reopen final decisions in accordance with §§ 404.987 [and] 404.988 . . . after the 60 days for initiating review under [§] 404.969 . . . have expired.*

Administrative Review Process; Identification and Referral of Cases for Quality Review Under the Appeals Council's Authority to Review Cases on Its Own Motion, 63 Fed. Reg. 36,560, 36,563 (July 7, 1998) (emphasis added) (citing AR 87–2(11)). Even more tellingly, the SSA rescinded Acquiescence Ruling 87–2(11) concurrently with the promulgation of the revised § 404.969. It discussed this decision in its response to a public comment requesting clarification of the changes to § 404.969(d) relative to the *Butterworth* decision:

[W]e are rescinding [AR 87–2(11)] as obsolete based on the language that we are including in [§] 404.969(d) . . . to clearly state our policy that the Appeals Council has authority to reopen, in accordance with the requirements of §§ 404.987 [and] 404.988 . . . , ALJ decisions that come before it for possible own-motion review. This language establishes that a case that has come before the Appeals Council under the provisions of [§] 404.969, and for which the 60-day period for taking own-motion review has lapsed, is properly before the Council for the purpose of considering reopening under the existing regulations on reopening. This language also establishes that *it is our intent that the Appeals Council's authority to reopen an ALJ's decision in accordance with the provisions of those regulations, which establish conditions for reopening that differ from the conditions for own-motion review, should not be subject to the 60-day time limit in [§] 404.969 . . . .*

*Id.* at 36,564 (emphasis added).[3] The notice rescinding Acquiescence Ruling 87–2(11) contains similar language:

Under the final rules, the Appeals Council's authority to reopen and revise ALJ decisions is not limited by the 60-day period provided in paragraph[] 404.969(a) . . . .

*Because the final rules address the* Butterworth *court's concerns and explain that the Appeals Council's authority to reopen and revise ALJ decisions is not subject to the 60-day period provided in paragraph[] 404.969(a) . . . , we are rescinding Acquiescence Ruling 87–2(11).* The final rules and this rescission restore uniformity to our nationwide system of rules in accordance with our commitment to the goal of administering our programs through uniform national standards . . . .

Rescission of Social Security Acquiescence Ruling 87–2(11), 63 Fed. Reg. at 36,727 (emphasis added).

---

[3]Ferriell attempts to draw support for his interpretation of the Appeals Council's reopening authority from the SSA's statement that "the Appeals Council has authority to reopen . . . *ALJ decisions that come before it* for possible own-motion review." 63 Fed. Reg. at 36,564 (emphasis added). We do not think that, in context, this statement is akin to the *Butterworth* court's requirement that a case be "properly before" the Appeals Council before it may initiate a reopening. The phrase Ferriell emphasizes is modified by "for *possible* own-motion review," indicating that the ALJ decisions to which this sentence refers are not those that the Appeals Council has asserted jurisdiction over by initiating direct review, but rather those which the Appeals Council may be considering for own-motion review. Furthermore, the sentence Ferriell quotes is followed by a statement that unequivocally rejects the notion that the Appeals Council's authority is limited by § 404.969: "[T]he Appeals Council's authority to reopen an ALJ decision . . . should not be subject to the 60-day time limit in [§] 404.969 . . . ." *Id.*

The plain language of these statements indicates that, under the SSA's interpretation of the direct review and reopening procedures, the Appeals Council may reopen an ALJ's decision more than sixty days after the decision is issued, as long as it complies with the requirements of §§ 404.987 and 404.988.[4] We see no reason not to defer to this interpretation of §§ 404.969, 404.987, and 404.988, as it is consistent with the text of those regulations. Though the reopening provisions are somewhat vague, as noted above, § 404.969(d) as amended explicitly states that the Appeals Council may consider reopening a case after sixty days. Furthermore, § 404.969(d) does not seem to contain any limits on which ALJ decisions might be reopened by the Appeals Council beyond the general rule that "hearing decision[s] or . . . dismissal[s] of hearing request[s]," § 404.967, are "subject to review under [§ 404.969]," § 404.969(a); the regulation refers to "a" decision or dismissal as being eligible for reopening, and the qualifier "[i]f [the Appeals Council] is unable to decide within the applicable 60-day period whether to review a decision or dismissal" contemplates the reopening of decisions that were not subject to direct review.[5]

---

[4] Ferriell attempts to cast doubt on the Commissioner's interpretation with sections from the SSA Program Operations Manual System ("POMS") and Hearings, Appeals, and Litigation Law Manual ("HALLEX"). First, he cites POMS section DI 12020.005, which outlines the procedures under which the Office of Quality Assurance and Performance Assessment may refer a case to the Appeals Council for consideration under its own-motion review authority. Soc. Sec. Admin., POMS § DI 12020.005 (2006), *available at* http://policy.ssa.gov/poms.nsf/links/0412020005. This section notes that the Appeals Council must notify the claimant of its action within sixty days of the ALJ decision, *id.*, but this is not surprising; the section is contained in the part of the manual outlining the Appeals Council's direct review procedures. In the sections dealing with the SSA's reopening procedures, the manual states that the authority to reopen is vested in "either [t]he component(s) . . . which made the determination[,] or the component(s) . . . which has the authority to review and, if necessary, revise the determination." Soc. Sec. Admin., POMS § GN 04001.020 (2008), *available at* http://policy.ssa.gov/poms.nsf/links/0204001020. For an ALJ decision, these components are the ALJ and the Appeals Council. Second, Ferriell points out language in HALLEX section I–2–9–15: "When a case is properly before the Appeals Council and the conditions for reopening exist, the Appeals Council has the authority to consider the issue of reopening and revising any final determination or any decision or dismissal action issued by the Appeals Council or by an ALJ." Soc. Sec. Admin., HALLEX § I–2–9–15 (2005), *available at* http://www.ssa.gov/OP_Home/hallex/I-02/I-2-9-15.html. Admittedly, this section does use the "properly before" language employed in *Butterworth*, but it is not necessarily inconsistent with the Commissioner's interpretation of the reopening provisions in light of the amendments to § 404.969. Now that § 404.969(d) states that the Appeals Council may consider a decision for reopening if it cannot decide whether to review the case within sixty days of the ALJ's decision, such cases could be considered "properly before" the Appeals Council. Further, we note that, though internal manuals like POMS and HALLEX might provide some evidence of the SSA's interpretations of its regulations, they are properly interpreted in light of remarks promulgated by the SSA as part of the notice-and-comment procedures resulting in the final rule amending § 404.969.

[5] At least one district court has required the SSA to demonstrate that the Appeals Council was "unable to decide within the applicable 60-day period whether to review a decision or dismissal," § 404.969(d), before sanctioning an Appeals Council reopening beyond the sixty-day window for direct review, *see Greaux v. Apfel*, 137 F. Supp. 2d 1308, 1315 (M.D. Fla. 2001). In *Greaux*, the memorandum

Ferriell disputes this reading, arguing that, instead of establishing that the Appeals Council need not assert jurisdiction over a case in order to later reopen an ALJ's decision, § 404.969(d) preserves the *Butterworth* limitations and merely specifies that one way for the Appeals Council to assert its jurisdiction is to issue a notice of review within the sixty-day time limit for direct review. We can discern no basis for this argument in the text of § 404.969(d). According to that section, "[t]he Appeals Council's decision to review a case is established by its issuance of the notice of review." § 404.969(d). The next sentence grants the Appeals Council authority to reopen a case "[i]f it is unable to decide within the applicable 60-day period whether to review a decision or dismissal." *Id.* Thus, under the terms of § 404.969(d), in those cases that the Appeals Council could not decide to review within sixty days of the ALJ's decision—cases that are explicitly eligible for reopening by the Appeals Council— it would not issue a notice of review. This directly contradicts Ferriell's argument. Furthermore, in cases in which the Appeals Council has done nothing but issue a notice of review before the expiration of the sixty-day period it could simply revise the ALJ's decision under direct review, rendering its express reopening authority superfluous. Finally, even if Ferriell's reading of the regulation were tenable, his interpretation conflicts with the SSA's, which we have already determined is also supported by the text of § 404.969(d).

Thus, since the SSA's interpretation is consistent with our reading of the text of the applicable regulations and not clearly erroneous, we defer to it. *See Auer*, 519 U.S. at 461. The Appeals Council may reopen and revise an ALJ's decision after the sixty-day window for direct review has expired, as long as the requirements of §§ 404.987 and 404.988 are met. We note this holding is consistent with this court's decision in *Fox v.*

---

referring plaintiff's case to the Appeals Council for reconsideration was received by the ODAR only thirty-four days after the ALJ's decision, but the Appeals Council did not issue a notice of reopening to the claimant until ninety days after the decision. So, the court remanded the case for a determination of whether the Appeals Council could have decided to review plaintiff's decision after it received the referral but before the sixty-day window for direct review had expired. We need not decide whether the Appeals Council must make such a showing to justify a reopening under the circumstances of this case. Ferriell does not raise this argument, and his case was not referred to the Appeals Council until June 27, 2007—sixty-nine days after the ALJ's April 19, 2007 decision—so it would not have been able to decide to review the case within sixty days regardless.

*Bowen*, as well as the holdings of the few district courts to consider this issue. *See Scheuering ex rel. Scheuering v. Barnhart*, No. Civ. 02–418–M, 2003 WL 21731300, at \*3–\*4 (D.N.H. July 25, 2003) (unpublished decision); *Greaux v. Apfel*, 137 F. Supp. 2d 1308, 1315 (M.D. Fla. 2001) (acknowledging that Appeals Council might reopen a case more than sixty days after an ALJ's decision on a showing that it was unable to decide whether to initiate direct review within sixty days). Ferriell does not contend that the Appeals Council's action in his case violated the parameters of § 404.988(b): The case was reopened within four years of the initial determination, and the erroneous date last insured relied on by the ALJ constituted good cause for reopening as "evidence [that] clearly shows on its face that an error was made." 20 C.F.R. § 404.989(a)(3). Therefore, the Appeals Council was justified in reopening and revising Ferriell's case, and its decision should not be vacated as untimely.

**II. Due Process**

Ferriell next asserts that the proceedings before the Appeals Council denied him due process. In *Flatford v. Chater*, 93 F.3d 1296, 1304–05 (6th Cir. 1996), this court assumed that an applicant for social security disability benefits has a property interest in those benefits protected by the Fifth Amendment. *See also Richardson v. Perales*, 402 U.S. 389, 401–02 (1971) (assuming procedural due process protections apply to a social security disability claim hearing). At a minimum, the Due Process Clause requires that an individual is afforded notice and an opportunity to be heard before the deprivation of a protected interest through adjudication. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). In the context of a social security hearing, due process requires that the proceedings be "full and fair." *Flatford*, 93 F.3d at 1305 (quoting *Perales*, 402 U.S. at 401–02). To determine whether such a hearing passes constitutional muster, a court must look to the three factors identified by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest,

including the function involved and the fiscal and administrative burdens
that the additional or substitute procedural requirement would entail.

*See also Flatford*, 93 F.3d at 1306.

Ferriell claims that the reopening of his case violated due process guarantees because he did not receive an adjudication as to whether he could establish the onset of his disability before the December 31, 2003 date last insured imposed by the Appeals Council.  Though in his initial application Ferriell alleged an onset date of August 1, 1998, he amended that date to May 17, 2005 during his hearing before the ALJ, a change which he claims he made in reliance on the ALJ's erroneous decision that his date last insured was December 31, 2005.  Now that the Appeals Council has revised his date last insured to the earlier December 31, 2003 date, Ferriell argues that the Appeals Council should have remanded his case to an ALJ for reconsideration of his onset date.

We recognize that, under the first *Eldridge* factor, the private interest at stake here is potentially great.  We also note that, if the reopening procedures did not afford Ferriell the opportunity to have his argument considered by some component of the SSA, this would raise serious due process concerns.  However, the Appeals Council did give Ferriell the opportunity to raise the issue concerning his onset date.  Therefore, the importance of Ferriell's interest in disability benefits is outweighed by the low risk of an erroneous deprivation posed by the reopening procedures and the large administrative burden associated with a procedure requiring remand in cases such as Ferriell's.

Examination of the SSA's reopening provisions and correspondence with Ferriell indicates that he had the chance to assert his argument regarding his disability onset date before the Appeals Council.  The regulations governing the reopening procedures require that the SSA notify a claimant of any revisions to his case as well as his rights to further review.  20 C.F.R. § 404.992(a); *see also* Soc. Sec. Admin., POMS § DI 27525.001 (2009), *available at* http://policy.ssa.gov/poms.nsf/links/0427525001 (outlining the process due to claimants during an adverse reopening).  The September 14, 2007 letter Ferriell received from the Appeals Council notified him that it was reopening his decision and was planning to amend his date last insured with the result that he would

be denied benefits.  It also spelled out the opportunities available for him to contest this ruling.  Specifically, the notice indicated that he could "send [the Appeals Council] more evidence or a statement about the facts and the law in your case," and that such evidence would be considered if "new and material" and "about 'disability' starting on or before December 31, 2003, the date you were last insured for disability benefits."  It also informed him that he could ask for an appearance before the Appeals Council.

This letter met the standards laid out in the reopening regulations and provided Ferriell with adequate notice and opportunity to state his objections to the Appeals Council's proposed decision and to provide it with additional evidence.  In fact, Ferriell's representative did submit materials contesting the proposed revision to the Appeals Council; she asserted in a letter that the self-employment income recorded in Ferriell's revised tax returns for 1999 and 2000 extended his date last insured to December 31, 2005.  Ferriell cannot tenably claim that he was unaware of his opportunity to also present his argument regarding his disability onset date.  The notice he received placed no limits on what may be addressed in the "statement about the facts and law in your case" that he was entitled to present to the Appeals Council, and the description about what evidence he might submit explicitly stated that the Appeals Council would consider evidence of disability on or before December 31, 2003.  Thus, since the Appeals Council's procedures provide Ferriell and similarly-situated individuals a fair opportunity to present arguments like Ferriell's claim for an amended onset date of disability, these procedures present a low risk of an erroneous deprivation of benefits.

Additionally, we do not see any merit in a procedure that would require the Appeals Council to remand Ferriell's case to an ALJ after it revised his date last insured. Since Ferriell did not present his argument on this issue nor any new evidence regarding his disability to the Appeals Council, it had before it only the written record presented to the ALJ and the testimony taken at the hearings before the ALJ on January 17, 2007 and February 26, 2007.  Several times in the course of those proceedings, the ALJ pointed out the lack of evidence to support a finding that Ferriell was disabled prior to

2005. The ALJ noted that the only medical evidence in the record before 2005 was an August 2002 hospital report of the results of a pelvic x-ray that "only showed some mild changes." He also commented that "up until [2005], there just isn't really hardly any evidence at all, and I know you filed your claim back about then, in June of '05 . . . . That's when your medical evidence starts . . . popping up." On this record, it is easy to see why the Appeals Council concluded that "there is no medical evidence prior to 2005" and declined to remand for a renewed finding on the onset date of Ferriell's disability. A decision against remanding the case is further bolstered by the fact that Ferriell had voluntarily amended his onset date to May 17, 2005 after the ALJ's above-quoted remarks, and had made no assertion since the reopening of his case that he could establish an onset date prior to the December 31, 2003 date last insured. Requiring remand here and in similar cases would drain SSA resources and impose a substantial administrative burden for little or no increase in the accuracy of benefits determinations.

Examined under the three *Eldridge* factors, the SSA's procedures for reopening disability decisions as applied in Ferriell's case do not violate the guarantees of due process. Ferriell had the chance to prove he was disabled prior to the revised December 31, 2003 date last insured. His inability to receive an adjudication of his disability status before May 17, 2005 resulted from his failure to present this argument to the Appeals Council, not faulty procedures. Therefore, the Fifth Amendment provides no basis for disturbing the Appeals Council's decision in Ferriell's case.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.