**Gaynell McCUIN, Plaintiff, Appellee,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellant.**

No. 86–1732.

United States Court of Appeals, First Circuit.

Argued Jan. 9, 1987.

Decided April 14, 1987.

John F. Daly, Dept. of Justice, with whom William Kanter, Dept. of Justice, Richard K. Willard, Asst. Atty. Gen., Washington, D.C., and Richard V. Wiebusch, U.S. Atty., Concord, N.H., were on brief, for defendant, appellant.

John E. Tobin, Jr. with whom Mitchell M. Simon and New Hampshire Legal Assistance, Concord, N.H., were on brief, for plaintiff, appellee.

Before BOWNES, Circuit Judge, ALDRICH, Senior Circuit Judge, and GIGNOUX,* Senior District Judge.

BOWNES, Circuit Judge.

Defendant-appellant Otis R. Bowen, Secretary of Health and Human Services (the Secretary), appeals from summary judgment by the United States District Court for the District of New Hampshire. The district court upheld a claim by plaintiff-appellee Gaynell McCuin that her benefits under Medicare Part A had been taken away by the Appeals Council of the Social Security Administration Office of Hearings and Appeals through an illegal "reopening" procedure. The district court certified the suit as a class action and issued summary

* Of the District of Maine, sitting by designation.

judgment for appellee in April, 1986. *See McCuin v. Bowen*, 634 F.Supp. 431 (D.N.H. 1986).

## I. SUMMARY OF FACTS

### A. *The Medicare Appeals Process*

Medicare Part A primarily covers institutional care such as hospital and nursing home services. The program is financed by payroll deductions. *See* 42 U.S.C. § 1395c-i (1982). Medicare Part B covers doctor bills and various other supplementary medical services and is financed through monthly premiums and general revenue funds. *See* 42 U.S.C. §§ 1395j-w (1982).

A claimant who is dissatisfied with the initial administrative determination and reconsideration of her claim may request a hearing before an Administrative Law Judge (ALJ). After the ALJ issues a decision, the claim is subject to further review by the Appeals Council. The Appeals Council may, on its own motion, review the decision within sixty days, pursuant to 20 C.F.R. § 404.969 (1986). The claimant may also request review by the Appeals Council, pursuant to 20 C.F.R. § 404.967 (1986). After the sixty-day time limit, the claim is subject to "reopening" by the Appeals Council, pursuant to 20 C.F.R. §§ 404.987–989 (1986). As we discuss in detail below, McCuin contends that after the sixty-day time limit for "review" has expired, cases may only be "reopened" upon the motion of a claimant; the Secretary argues that the Appeals Council may reopen upon its own initiative. A claim may also be appealed to federal court, depending on the amount of the claim and the nature of the appeal.

### B. *Proceedings Below*

This case arose when McCuin sought Medicare reimbursement for hospital expenses incurred in March, 1981. In May, 1981, an ALJ found that she was ineligible for benefits. She sought review from the Appeals Council. The Council remanded to the ALJ for a new hearing. On July 18, 1983, a second decision was issued, grant-

ing coverage for part of McCuin's hospital stay and finding her not liable for the costs of noncovered services. The finding of nonliability was pursuant to the "waiver of liability" provision of 42 U.S.C. § 1395pp (1982).

Eight months later, on March 22, 1984, the Appeals Council informed McCuin that it was reopening her case pursuant to 42 C.F.R. § 405.750(b) and 20 C.F.R. § 404.-988. The Appeals Council based its decision to reopen on a provision of 20 C.F.R. § 404.988 which allows reopening for "good cause" within four years of the initial decision. The Council upheld the ALJ's decision finding coverage for part of the hospitalization costs. It rejected, however, the applicability of the "waiver of liability" provision of 42 U.S.C. § 1395pp. The Council held that the ALJ had committed an error of law in granting the waiver of liability for noncovered services. The amount of medical expenses that had been waived by the ALJ was $940.43.

McCuin brought suit in district court in October, 1984. Her suit challenged only the propriety of the reopening of her case on the Appeals Council's own initiative and did not argue the merits of her Medicare claim. McCuin charged that such so-called "own-motion"[1] reopening violated the Secretary's regulations as well as her right to due process of law. McCuin also claimed that the regulations only allow reopening, no matter at whose instigation, on the basis of errors of fact, not of law. The Secretary asserted that the regulations allowed the Appeals Council to reopen cases *sua sponte* and that such reopening, on errors of fact or law, presented no issues of due process. He also contested the court's jurisdiction over the suit.

## II. JURISDICTION

The Secretary claims that the district court had no jurisdiction to hear this case. This argument is based on the wording of the statute authorizing review for Medicare claims, 42 U.S.C. § 1395ff. Subsection (b) states in pertinent part:

---

**1.** Referring to such *sua sponte* reopening by the Appeals Council as "own-motion" reopening is misleading for reasons that should become clear below. *See, e.g., infra*, p. 173 n. 7.

(1) Any individual dissatisfied with any determination under subsection (a) of this section as to—

. . . .

(C) the amount of benefits under Part A of this subchapter (including a determination where such amount is determined to be zero)

shall be entitled to a hearing by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.

(2) Notwithstanding the provisions of subparagraph (C) of paragraph (1) of this subsection, a hearing shall not be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $100; nor shall judicial review be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $1,000.

The Secretary argues that subsection (b)(2) shows that Congress intended to bar judicial review for claims under $1,000, regardless of the rubric under which a court seeks to assert jurisdiction.

McCuin contends that she has not challenged the *amount* of her benefits, which would indeed subject her to the joint provisions of subsections (b)(1)(C) and (b)(2), but the *procedure* by which claims are reopened. Faced with such a claim, she argues, the district court properly asserted jurisdiction under the mandamus statute, 28 U.S.C. § 1361, and could have asserted jurisdiction under the federal-question statute, 28 U.S.C. § 1331.[2]

This jurisdictional dispute is essentially an argument over whether the present case is governed by *United States v. Erika, Inc.,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), or *Bowen v. Michigan Academy of Family Physicians,* —— U.S. ——, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). Both of those cases involved Medicare Part B claims. In *Erika,* the Court ruled on the propriety of judicial review of a hearing officer's determination of the amount of a Medicare Part B claim. The Court based its analysis on the language of 42 U.S.C. § 1395ff. It found that "[i]n the context of the statute's precisely drawn provisions," the conspicuous failure of the statute to authorize any judicial review for Part B amount determinations "provides persuasive evidence that Congress deliberately intended to foreclose further review of such claims." *United States v. Erika, Inc.,* 456 U.S. at 208, 102 S.Ct. at 1654 (cites omitted). The Secretary argues that this logic should apply even more strongly here, since the statute *expressly* bars judicial review for Part A claims under $1,000.

In *Bowen v. Michigan Academy of Family Physicians,* —— U.S. ——, 106 S.Ct. 2133, 90 L.Ed.2d 623 the Court amplified its *Erika* ruling. In *Michigan Academy,* an association of family physicians and several individual doctors challenged the validity of a regulation issued under Part B. The government contended that federal-question jurisdiction was implicitly barred by the absence of a provision for such review in § 1395; it also argued that review was explicitly barred by 42 U.S.C. § 405(h), a Social Security provision incorporated into the Medicare statute, which bars any review except as authorized by the statute.[3]

---

**2.** We gave leave to appellee, pursuant to 28 U.S.C. § 1653, to amend her jurisdictional statement to include federal-question jurisdiction. Appellant does not challenge the propriety of the inclusion of federal-question jurisdiction in appellee's argument. Nor does it appear to us that appellant contests the applicability of either mandamus or federal-question jurisdiction here except insofar as such jurisdictional assertions are barred by the terms of the Medicare statute.

**3.** 42 U.S.C. § 405(h) states:
The findings and decision of the Secretary after a hearing shall be binding upon all indi-

viduals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under sections 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

Section 405(h), a provision of the Social Security program, was made applicable to the Medicare program by 42 U.S.C. § 1395ii (1982 Supp. II).

The Court held that, although Part B amount determinations were precluded from review, "challenges to the validity of the Secretary's instructions and regulations" were not. *See Michigan Academy,* 106 S.Ct. at 2141. The Court rejected the government's § 405(h) argument, holding that the section must be interpreted in light of the policy and history of the Medicare statute. *See id.* The Court found that Congress intended to preclude review of Part B amount determinations to avoid burdening the courts with claims for relatively small amounts. *See id.* at 2139. This congressional intent would be irrelevant to broader challenges to the regulations. *See id.* at 2141. In reaching its holding, the Court stressed the history and importance of judicial review. It declared that the presumption that Congress intends judicial review of administrative action can only be overcome on the basis of clear and convincing evidence. *See id.* (citing *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967)). "Indeterminate evidence" of legislative intent does not suffice to overcome this presumption. *See id.* 106 S.Ct. at 2138 (citing *Abbott Laboratories,* 387 U.S. at 141, 87 S.Ct. at 1511). McCuin argues that *Michigan Academy's* analysis of challenges to Part B provisions is applicable to the present challenge to Part A regulations.

While the present case presents some features similar to both *Erika* and *Michigan Academy,* we agree with McCuin that the latter case provides the more appropriate analogy. The statute's three-tier system for review of Part A cases, providing for different levels of review for claims under $100, claims between $100 and $1,000 and claims over $1,000, involves similar policy considerations as the Part B system the Court considered in *Michigan Academy.* Section 1395ff(b) clearly refers to individuals who are dissatisfied with the *amount* of benefits they have been awarded. The three-tier system shows that Congress precluded review for some claims to avoid burdening the courts with cases involving relatively insignificant amounts. The legislative context, therefore, is analogous to that of the Part B provisions. The

Court has instructed us, in such a context, to construe the word "amount" narrowly.

In *Michigan Academy,* the Court declared that a challenge to the *"method "* of determination, rather than to the amount determined, cannot be barred from judicial review absent an explicit legislative statement. *See Michigan Academy,* 106 S.Ct. at 2138. By "method" challenges, the Court referred to "substantial statutory and constitutional challenges to the Secretary's administration of Part B of the Medicare program." *Id.* at 2141. We find that judicial review of similar challenges to Part A of the Medicare program should be granted on the basis of the same policy considerations the Court considered in relation to Part B.

One feature of the present case, distinguishing it somewhat from *Michigan Academy,* bears mentioning. In *Michigan Academy,* the relief requested was purely prospective; the present case, however, was brought by an individual whose already awarded benefits were at issue. McCuin, however, has not sought review of the merits of her Medicare claim. Conceding that § 1395ff bars her from making such an argument, she has solely contested the propriety of the Secretary's reopening procedure. *Michigan Academy* makes no distinction between purely prospective challenges and challenges which have arisen in connection with a past claim but which are directed solely at the "method" of determination; nor does the Court's reasoning in that opinion give any grounds for making such a distinction.

Finally, we note that jurisdiction is particularly appropriate here in view of the constitutional challenge to the Secretary's interpretation of the regulations. The Court in *Michigan Academy* referred to the serious constitutional questions that would have arisen if it had "construed § 1395ii to deny a judicial forum for constitutional claims arising" under Medicare Part B. *See Michigan Academy,* 106 S.Ct. at 2141 n. 2. In *Bartlett on Behalf of Newman v. Heckler,* 576 F.Supp. 830 (D.D.C.1983), a pre-*Michigan Academy* case, the court ruled that a Part A claimant who did

not meet the $1,000 jurisdictional requirement could not be precluded from raising a constitutional challenge to a provision in the Medicare statute. We think McCuin's constitutional claim deserves serious consideration. It is not merely a matter of "skillful pleading," as the Secretary intimates.

■ Section 1395ff bars judicial review for challenges to the amount of Medicare Part A determinations. We find, however, that it does not prohibit either mandamus or federal question jurisdiction for challenges to the procedures by which the Secretary arrives at such determinations. The district court, therefore, properly asserted jurisdiction over McCuin's challenge to the Secretary's interpretation of the reopening regulations.

### III. CLASS ACTION

Appellee McCuin moved that her suit be certified as a class action by the district court. She defined the class as including all Social Security Act claimants under Title II (Old Age, Survivors, disability benefits), Title XVI (Supplemental Security Income), and Title XVIII (Medicare), within the District of New Hampshire who fulfill three conditions:

 a) they must have received an initial determination within four years before the commencement of this action on October 23, 1984; and

 b) they must have since received or will receive an ALJ decision favorable in whole or in part; and

 c) these decisions were not reviewed or will not be reviewed by the Appeals Council within 60 days of the date of the ALJ's decision.

The district court granted the motion for certification without making any supporting findings.

The Secretary challenges the certification on several grounds. First, he contends that the class as defined in appellee McCuin's motion is overbroad. The class includes individuals who face only the *possibility* that the Appeals Council might re-

open their cases after the sixty-day time limit has expired, as well as those whose cases have actually been reopened. The Secretary contends that the mere possibility of an allegedly illegal reopening does not constitute a sufficient legal harm for inclusion in the class. He cites *O'Shea v. Littleton,* 414 U.S. 488, 497–98, 94 S.Ct. 669, 676–77, 38 L.Ed.2d 674 (1974), where the Court held that plaintiffs cannot challenge the manner in which criminal statutes are enforced unless they show that they are likely to be prosecuted for doing so. *See also In re Justices of the Supreme Court of Puerto Rico,* 695 F.2d 17, 24 (1st Cir.1982).

The purported class here is distinguishable to a certain extent from that in *O'Shea.* First, unlike the plaintiffs in *O'Shea,* individuals who have received favorable ALJ decisions are already subject to *sua sponte* claims of jurisdiction by the Appeals Council under the Secretary's interpretation of the regulations. McCuin contends that the legal harm that these individuals suffer is the deprivation of the finality that an ALJ decision should afford a claimant after sixty days. This deprivation of certainty is particularly of concern, McCuin argues, because the beneficiaries of the programs involved are often elderly, disabled or indigent. Under such circumstances, the threat of withdrawal of benefits constitutes a present legal harm. *Cf. Hayes v. Secretary of Dept. of Public Safety,* 455 F.2d 798, 801 (4th Cir.1972) (prisoner who did not allege actual brutality against himself may be part of a class when harm is living in an institution under threat of brutality).

This case presents a close question under *O'Shea.* The difficulty in resolving the issue derives from the fact that McCuin did not show to what extent the Appeals Council is likely to reopen the cases of claimants who receive favorable ALJ decisions. McCuin's failure to make this showing is primarily due to the fact that the Secretary did not provide much of the statistical in-

formation requested of him by McCuin's interrogatories.[4]

To be sure, the likelihood of the Appeals Council pursuing reopening might be inferred from the fact that it chose to issue a decision in the present case several months after the District Court of New Hampshire ruled in *Dion v. Heckler*, Civ. No. 83–442–D (D.N.H.1984) [Available on WESTLAW, DCT database], that such reopening was a violation of due process of law. It would be difficult for us, however, on this basis alone, to find that withdrawal of benefits is sufficiently likely to sustain a class action without further evidence of a determined intent on the part of the Appeals Council to violate court orders.

The Secretary also challenges certification of those whose cases *have* been reopened on the grounds that the "numerosity" requirement of Federal Rule of Civil Procedure 23(a)(1) has not been demonstrated. Like the first challenge to the certification of the class, this claim is made possible by the Secretary's own failure to disclose how many of the 1,220 favorable ALJ decisions issued for all three categories between January, 1982, and September, 1984, were reopened by the Appeals Council.

█ McCuin cites several principles which support a relaxation of the requirement of a rigorous demonstration of numerosity in certain circumstances. First, district courts have broad discretion to grant or deny class certification. A district court's decision should only be reversed when that discretion is abused. *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir.1985), *cert. den.*, —— U.S. ——, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986). Second, where only declaratory and injunctive relief is sought for a class, plaintiffs are not required to identify the class members once the existence of the class has been demonstrated. *See, e.g., Doe v. Charlestown Area Medical Center*, 529 F.2d 638 (4th Cir.1975). Finally, district courts may draw reasonable inferences from the facts presented to find the requisite numerosity. In *Doe v. Flowers*, 364 F.Supp. 953, 954 (N.D.W.Va.1973), *aff'd*, 416 U.S. 922, 94 S.Ct. 1921, 40 L.Ed.2d 279 (1974), the adoption of regulations designed to withdraw benefits from a class of AFDC recipients was held to be a reasonable basis for establishing the numerosity of that class.

█ We agree that these principles have some applicability to the present case. Nevertheless, we find it impossible to arrive at a decision on either of the Secretary's challenges in the absence of factual findings by the district court that could conclusively resolve the matter. We are reluctant to reverse the class certification and allow the Secretary to benefit from his refusal to respond to requests for discovery. Yet we will not simply uphold the class because of this refusal. Such a penalty on a party for failure to respond to discovery is generally not imposed in the absence of a violation of a court order mandating compliance with the discovery request. *See Stevens v. Greyhound Lines, Inc.*, 710 F.2d 1224, 1228 (7th Cir.1983). No court order was issued in the present case.

█ We, therefore, remand the issue of class certification to the district court. The court shall make factual findings in its reconsideration of the propriety of the certification of the purported class in this case. The district court may, of course, order the Secretary to answer the interrogatories if it finds it appropriate.

## IV. WHO MAY INITIATE REOPENING?

The substantive dispute in this case concerns the interpretation of the regulations

---

4. In Title II and Title XVI cases, more numerous by far than the Title XVIII Medicare cases, the Secretary provided no information on the number of favorable ALJ decisions reopened by the Appeals Council after sixty days. With regard to Medicare cases, he provided the figures only from April, 1983, forward. Between April, 1983, and October, 1984, five favorable ALJ decisions in Medicare cases were issued, of which two were reopened after sixty days by the Appeals Council. From October, 1984, through January, 1986, no such cases were reopened, though the Secretary's responses do not indicate how many favorable ALJ decisions were issued during that period. While two out of five is a fairly high percentage, it is not a very reliable statistical indication.

governing the "review" and "reopening" by the Appeals Council of Medicare determinations. The conflicting interpretations of the regulations offered by the parties are supported by irreconcilable district and circuit court decisions from many jurisdictions. This is rather ironic because the regulations were rewritten in 1980 to "reorganize and restate in simpler language" an earlier version of the same provisions. *See* 45 Fed.Reg. 52078 (1980).

■ The Secretary is correct when he claims that his interpretation of his own regulations is to be given considerable weight. *See, e.g., Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616 (1965). This interpretation, however, must be reasonable in view of the language of the regulations and the policies they were meant to implement. In the present context, moreover, each of the conflicting interpretations seeks to resolve internal contradictions within the regulations that result from rival readings. In interpreting statutes and regulations, courts must try to give them a harmonious, comprehensive meaning, giving effect, when possible, to all provisions. *See, e.g., Weinberger v. Hynson, Westcott and Dunning,* 412 U.S. 609, 630–31, 93 S.Ct. 2469, 2483–84, 37 L.Ed.2d 207 (1973).

■ Most importantly, the deference accorded to an administrative agency's interpretations depends on the extent to which the matters at issue depend peculiarly on the agency's field of expertise. *Cf., e.g., Thompson v. Clifford,* 408 F.2d 154, 167 (D.C.Cir.1968). The present case presents issues of the fairness of the way in which legal and factual issues are resolved, the finality of judgment and due process of law. These issues are clearly *"legal* issues not generally recognized to be within the Secretary's ken and, for obvious reasons, more commonly consigned to the judiciary's 'field of expertise.' " *Powell v. Heckler,* 789 F.2d 176, 179 (3d Cir. 1986) (citing 4 K. Davis, *Administrative Law Treatise* §§ 30.09, 30.14 (1958)).

We first review the regulations and the various possible interpretations, then consider the due process challenge to the Sec-retary's interpretation, and, finally, proceed to our holding.

### A. The Regulations: "Review" and "Reopening"

Initiation of Appeals Council "review" is governed by 20 C.F.R. §§ 404.967–969, a group of regulations entitled "Appeals Council Review." Section 404.967 allows a claimant to request review by the Appeals Council of a hearing decision. Section 404.969 allows the Appeals Council to decide *sua sponte* to initiate such review:

§ 404.969 Appeals Council initiates review.

Anytime within 60 days after the date of a hearing decision or dismissal, the Appeals Council itself may decide to review the action that was taken. If the Appeals Council does review the hearing decision or dismissal, notice of the action will be mailed to all parties at their last known address.

While the Appeals Council may review under § 404.969 for any reason, *see Lopez-Cardona v. Secretary of Health and Human Services,* 747 F.2d 1081 (1st Cir.1984), § 404.970 states the conditions under which the Council *will* review:

§ 404.970 Cases the Appeals Council will review.

(a) The Appeals Council will review a case if—

(1) There appears to be an abuse of discretion by the administrative law judge;

(2) There is an error of law;

(3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or

(4) There is a broad policy or procedural issue that may affect the general public interest.

(b) If new and material evidence is submitted with the request for review, the Appeals Council shall evaluate the entire record. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently in the record.

Sections 404.987–989 are entitled "Reopening and Revising Determinations and Decisions." Section 404.987 is the only section that explicitly discusses who initiates such a procedure and refers to reopening only on the motion of claimants:

**§ 404.987 Reopening and revising determinations and decisions.**

(a) *General.* Generally, if you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated time period, you lose your right to further review. However, a determination or a decision made in your case may be reopened and revised. After we reopen your case, we may revise the earlier determination or decision.

(b) *Procedure for reopening and revision.* You may ask that a determination or a decision to which you were a party be revised. The conditions under which we will reopen a previous determination or decision are explained in § 404.988.

Section 404.988 provides a three-level system to govern reopening:

**§ 404.988 Conditions for reopening**

A determination, revised determination, decision, or revised decision may be reopened—

(a) Within 12 months of the date of the notice of the initial determination for any reason;

(b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case; or

(c) At any time if—

(1) It was obtained by fraud or similar fault;

(2) Another person files a claim on the same earnings and allowance of the claim adversely affects your claim;

(3) A person previously determined to be dead, and on whose earnings record your entitlement is based, is later found to be alive;

. . . .

(9) It finds that you are entitled to monthly benefits or to a lump sum death payment based on the earnings of a deceased person, and it is later established that:

(i) You were convicted of a felony or an act in the nature of a felony for intentionally causing that person's death; or

. . . . [etc.]

*B. The Four Interpretations*

There are at least four positions that can be taken on the question of who may initiate the reopening procedure described in § 404.987–989. We begin with McCuin's position that only the claimants may initiate the procedure. This position was adopted by the court below and, in the context of identical regulations concerned with the reopening of Supplemental Security Income cases, by the courts in *Silvis v. Heckler,* 578 F.Supp. 1401 (W.D.Pa.1984), and *Dion v. Heckler,* Civ. No. 83–442–D (D.N.H.1984); it was also suggested in dictum by the court in *Delong v. Heckler,* 771 F.2d 266 (7th Cir.1985). This view stresses that § 404.987 speaks only of claimants requesting review while making no mention of the Appeals Council reopening a case of its own accord. Section 404.987 also states that the following section, 404.-988, merely lists the "conditions under which" claims will be reopened; § 404.988 does not purport to be an independent basis for a motion to reopen.[5] By contrast, the 60–day "review" provision, § 404.969, explicitly allows the Council to decide *sua sponte* to initiate review.

The crux of McCuin's argument is that interpreting the regulations to allow Appeals Council initiation of reopening would render meaningless § 404.969's provision

---

**5.** The court in *DeLong v. Heckler,* 771 F.2d at 267–68, offered a close reading of the language of § 404.987 that cogently suggests it was intended for claimants only. The provision says that "[g]enerally, if you ... do not request further review within the stated time period, you lose your right to further review. However, a determination or a decision made in your case may be reopened and revised." The court stated that the position of the word, "However," appears to indicate that the "may be reopened" clause refers to action on a motion by "you," the claimant.

for Appeals Council initiation of "review." Section 404.969 gives the Appeals Council sixty days within which to initiate review of decisions. If § 404.969 allowed it to initiate "reopening" of claims within four years, the sixty-day time limit would have no force.

The Secretary argues that interpreting the regulations as allowing only claimant-initiated reopening would render meaningless several of the provisions of § 404.988 which claimants would never invoke for themselves. Such provisions refer to cases reopened in order to take back benefits previously granted because, for example, of fraud or wrongdoing. *See, e.g.,* 20 C.F.R. §§ 404.988(c)(1) & (c)(9)(i).

McCuin defends her interpretation of § 404.988 by hypothesizing situations where persons other than members of the Social Security Administration might seek review under provisions such as § 404.-988(c)(9)(i). These situations involve multiple claimants for the same fixed amount of benefits. Benefits may be reduced to each individual of a group of claimants if the total benefits to which all are entitled exceed the maximum amount. *See, e.g.,* 20 C.F.R. § 404.403(a). Therefore, McCuin argues, a claimant may seek reopening of a case based on the contention that other claimants to the same sum of benefits fraudulently or feloniously acquired their status as beneficiaries. While McCuin's defense of her position is not without merit, it strains the language of some of § 404.988's provisions.

The second interpretation, urged by the Secretary, is that the Appeals Council may "reopen" of its own accord. This position was adopted by the courts in *Munsinger v. Schweiker,* 709 F.2d 1212 (8th Cir.1983), and *Reddington v. Bowen,* 640 F.Supp.

1005 (E.D.N.C.1986). According to this view, § 404.987 informs claimants of their right to request reopening but does not withhold that option from the Appeals Council. Section 404.988, under this view, refers to reopenings initiated by both the Appeals Council and claimants when it states the conditions under which decisions "may be reopened."

The Secretary argues that § 404.969 is not rendered meaningless by allowing Appeals Council initiation of reopening because "review" and "reopening" are essentially different procedures. Section 404.-969 allows review within sixty days for any reason while § 404.988 allows reopening only according to a graduated schedule.

This argument is quite tenuous, even aside from the indications that the distinction between "review" and "reopening" has sometimes escaped those in the Social Security Administration responsible for such matters. *See, e.g., Butterworth v. Bowen,* 796 F.2d 1379, 1389 n. 9 (11th Cir.1986). Section 404.988, at least on its face, allows reopening "for any reason" within a year.[6] Moreover, under the Secretary's interpretation of "good cause," cases may be reopened for errors of fact or of law within four years. When these two provisions are read in conjunction with the conditions under subsection (c) for indefinite reopening, the argument that reopening is "extraordinary" and fundamentally different than "review" loses much of its force. The Secretary's interpretation leaves the sixty-day time limit of § 404.969 largely illusory.

A third interpretation of the regulations was offered by the court in *Butterworth v. Bowen,* 796 F.2d 1379 (11th Cir.1986), in an apparent attempt to avoid the internal inconsistencies plaguing the interpretations discussed above. The *Butterworth* court

**6.** The Secretary argues that in practice the Appeals Council limits its reopening under § 404.-988(a) to cases falling into one of the categories listed in § 404.970. It is not clear whether the Secretary means that he is legally bound by this practice. Even if he has limited his own discretion under subsection (a), however, the one-year limit would still give the Appeals Council broad powers to nullify the sixty-day time limit for review. Section 404.970 would allow reopening for substantial errors of fact, errors of law,

abuse of ALJ discretion, and new evidence. Moreover, the Social Security Program Operation Manual System § 04040.090 states that the Appeals Council will reopen under subsection (a) for post-decision changes in legal *interpretation.* Given the breadth of the Secretary's claims for "any reason," we do not see how he avoids the charge that his "own motion" interpretation renders the regulations internally inconsistent.

accepted the argument that both of the two interpretations we have discussed above would render portions of the regulations meaningless. Accordingly, it adopted a "components" analysis: the Social Security Administration could indeed initiate reopening under § 404.988 but only that component of the Administration which had made the decision or which had the decision properly before it for review. This interpretation both keeps the Appeals Council within its sixty-day limit and avoids the difficulties raised by construing § 404.988(c) as referring solely to initiation by claimants. In the present case, this interpretation would mean that, after sixty days, reopening could only have been initiated by the claimant and by the Administrative Law Judge. This interpretation, while ingenious, suffers from the defect of relying on many detailed distinctions of which the regulations make no mention.

The fourth way in which courts have attempted to give meaning to all provisions of the regulations is based on the distinction between errors of fact and errors of law. Under this interpretation, the Appeals Council would be barred from reopening on its own initiative on the basis of errors of law. Section 404.989's reference to "errors on the face of the evidence" would, under this approach, allow Appeals Council *sua sponte* reopening only for errors of fact. Errors of law would be constrained by the sixty-day time limit for review. *See Fox v. Heckler*, No. C83–4197Y, Unempl.Ins.Rep. (CCH), ¶ 16,958 (N.D.Ohio March 5, 1986); *Marsh v. Heckler*, No. S–82–1122LKK, Unempl.Ins.Rep. ¶ 15,697 (E.D.Cal.1984). *See also Russell v. Califano*, No. C77–1059, Unempl.Ins. Rep. (CCH) ¶ 16,227 (N.D.Ohio 1978) (construing pre–1980 regulation identical to the current 20 C.F.R. § 404.989).

The advantage of this fourth interpretation is that it provides a basis for preserving some meaning both for the sixty-day time limit in § 404.969 and for those provisions of § 404.988 seemingly intended for Appeals Council initiation of reopening. Review, under this interpretation, would be concerned with issues that are ripe for appeal immediately, such as errors of law

and disputes over the substantiality of the evidence. "Good cause" reopening, on the other hand, would be limited to extraordinary matters such as new evidence or decisions based on gross factual errors. However, while this interpretation avoids the complete nullification of the sixty-day review limit through four-year "good cause" reopening, it leaves the Appeals Council free to avoid that limit through one-year "any reason" reopening.

As the foregoing review of the possible interpretations of the regulations shows, there is *no* reading which would not stretch the language of the regulations to a considerable extent. We turn now to the due process issue raised by the regulations to determine which of the interpretations comports best with constitutional principles. We think that an interpretation comporting with the requirements of due process would best carry out the intent of Congress in passing the statute authorizing the regulations.

### C. Due Process Challenges

The district court in this case found that the Secretary's interpretation of the regulations violated due process. It based its holding on the reasoning in *Dion v. Heckler*, Civ. No. 83–442–D (D.N.H.1984), a decision interpreting 20 C.F.R. § 404.1487, a Social Security regulation identical to § 404.987. The district court held that in initiating reopening on its own initiative, the Appeals Council

> "exceeded its authority granted by the regulations, deprived [the claimant] of fair notice of the Secretary's intentions, stripped away the protective cloak of due process, and destroyed the surety which a final, binding decision should guarantee. *See United States v. Larionoff*, 431 U.S. 864 [97 S.Ct. 2150, 53 L.Ed.2d 48] (1977); *Mathews v. Eldridge*, 424 U.S. 319 [96 S.Ct. 893, 47 L.Ed.2d 18] (1976)."

*McCuin v. Bowen*, 634 F.Supp. 431, 433 (quoting *Dion v. Heckler* at 4).

McCuin bases her due process claim on the "attack on finality" that would result from allowing the Appeals Council to initi-

ate reopening. She contends that the possibility of such *sua sponte* reopening deprives the beneficiary of any expectation that the judgment is binding on the parties. A favorable decision, appellee argues, means only that the claimant must put the money in escrow for at least four years.

McCuin acknowledges that there is little precedent for her due process argument, other than *Dion* and the decision below. She contends, however, that this paucity of precedent stems from the fact that finality of judgment is basic to every adjudicatory system and is seldom, if ever, circumvented in this way.

We find McCuin's contentions quite forceful. In *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), the Court said that finality, as embodied in such doctrines as collateral estoppel and res judicata, is a

> fundamental precept of common law adjudication.... Application of both doctrines [collateral estoppel and res judicata] is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction. *Southern Pacific R. Co.*, *supra* at 49 [18 S.Ct. at 27]; *Hart Steel Co. v. Railroad Supply Co.* 244 U.S. 294, 299 [37 S.Ct. 506, 507, 61 L.Ed. 1148] (1917).

In *Southern Pacific Railroad Co. v. United States*, 168 U.S. 1, 49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897), cited in *Montana*, the Court had called the principle of finality "essential to the maintenance of social order."

■ These principles should be adapted to the administrative context in which this case arises. The Supreme Court has held that the law of res judicata is applicable to administrative proceedings when an agency is acting in a judicial capacity. *See, e.g., United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966). In *University of Tennessee v. Elliott*, — U.S. —, 106 S.Ct. 3220, 3226 n. 6, 92 L.Ed.2d 635 (1986), the Court quoted the Restatement (Second) of Judgment § 83 (1982):

> Where an administrative forum has the essential procedural characteristics of a court, ... its determinations should be accorded the same finality that is accorded the judgment of a court. The importance of bringing a legal controversy to a conclusion is generally no less when the tribunal is an administrative tribunal than when it is a court.

The Secretary argues, however, that principles of res judicata are not applicable because their preclusive effect applies to subsequent law suits whereas reopening by the Appeals Council involves a later stage of a single proceeding. This argument is not without merit. It serves, however, to highlight the anomalous nature of the power the Secretary claims for the Appeals Council when compared with generally accepted norms of adjudication. The Appeals Council, under the Secretary's interpretation, is both the advocate of reopening, and hence in that sense a party to the proceeding, as well as the adjudicatory tribunal passing on the propriety of reopening. It reserves this dual power for a period of at least four years and, in some cases, longer. In cases involving less than $1,000, moreover, it would reserve this power without any possibility of judicial review, assuming there is no "method" challenge. Reopening may be characterized as a later stage of the "same proceeding" only because of the extraordinary reserve power the Secretary claims for the Appeals Council.

The reopening power claimed by the Secretary takes away the finality that adjudication normally affords. This lack of finality, essentially a problem of substantive due process, spawns a problem of procedural due process: the impossibility of giving Medicare recipients fair notice of the Secretary's intentions. The notice sent to claimants in such cases states in pertinent part:

### NOTICE OF FAVORABLE DECISION
### PLEASE READ CAREFULLY

The enclosed decision is favorable to you, either wholly or partly....

*If you disagree with the decision*, you have the right to request the Appeals Council to review it within *60* days from

the date of *receipt* of the notice of this decision....

*The Appeals Council may, on its own motion, within 60 days from the date shown below, review the decision, which could possibly result in a change in the decision (20 CFR 404.969 and 416.1469).* After the 60–day period, the Appeals Council generally may only reopen and revise the decision on the basis of new and material evidence, or if a clerical error has been made as to the amount of the benefits or where there is an error as to the decision on the face of the evidence on which it is based (20 CFR 404.988; 42 CFR 405.750 and 405.1570). If the Appeals Council decides to review the enclosed decision on its own motion or to reopen and revise it, you will be notified accordingly.

Unless you timely request review by the Appeals Council or the Council reviews the decision on its own initiative, you may not obtain a court review of your case (section 205(g), 1631(c)(3), or 1869(b) or the Social Security Act). [Emphasis in original.]

This formulation is misleading for several reasons. While it tracks the language of the regulations in certain respects, it reorganizes it in certain crucial ways. That the Appeals Council "may reopen" a case leaves unresolved the question of who may initiate such reopening. While the underlined sentence governing "review" explicitly refers to the Council's "own motion," the sentence regarding "reopening" is left vague.[7] The possibility of claimant-initiated review, as provided in § 404.987, is omitted from the notice, though presumably implied in "may reopen." This omission alone would appear to be grounds for invalidating the notice. At any rate, the notice is certainly no more clear, and in many respects is more misleading, than the regulations which have given rise to sever-

al opposed interpretations by the federal courts. Presumably, Medicare claimants will not find interpreting these provisions any easier than the courts have.

An accurate notice of the Secretary's intentions would fully and honestly explain the status of claimants' benefits. It is difficult to formulate such a notice because of the nature of the Secretary's claims. An accurate notice might conceivably read:

The Appeals Council reserves the right to reopen your case within a year for any reason and within four years for good cause. "Good cause" includes errors of fact or law that we may have made in processing your claim. You should be aware that if we discover that we made such an error, the benefits we grant you today will be taken away from you at that time.

The absurdity of such a notice is apparent and clearly would not be tolerated in other adjudicative contexts. No other tribunal would be permitted to announce to a party that it has made a decision but that it reserves the right to change its mind for a period of four years. Such a "decision" gives with one hand what it takes away with the other. In effect, it signifies nothing other than that a final decision will not occur for at least four years.

The Secretary argues that there is no requirement of notice in this case because the ALJ's decision was favorable. Cases such as *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), would, therefore, be inapposite. We reject this contention for two reasons. First, such notices are issued when a decision is favorable to the claimant either in whole or in part. In the latter case, the claimant may wish to appeal or reopen the unfavorable elements. The failure of the notice to inform claim-

---

7. Indeed, while the notice and the parties in this litigation refer to Appeals Council initiation of review or reopening as an "own-motion" action, the phrase is really a misnomer. When the Appeals Council acts *sua sponte*, it does not make a "motion," in the sense in which that term is ordinarily understood in a court of law.

The Appeals Council simply acts, it does not seek anyone's permission to do so. As discussed in our treatment of the problem of finality, the Appeals Council seeks to be both the party that "moves" for reopening and the tribunal that "grants the motion."

ants of their rights under § 404.987 is defective in this regard.

More importantly, however, we would be reluctant to call any decision "favorable" in view of the power the Secretary claims for the Appeals Council. Under his interpretation, all decisions to grant benefits are only provisional, subject to the Council's *sua sponte* ability to reopen cases and withdraw benefits due to errors made in the determination. Such decisions do not actually grant benefits but, in effect, direct claimants to put the money in escrow for at least four years; the decision may have been based on some error of fact or law which the Appeals Council may discover in four years time. The so-called "favorable decision" is hard to distinguish during this four-year period from an unfavorable decision.

We find, therefore, that the Secretary's interpretation of the regulations would make it impossible to formulate a notice that would serve the function of informing beneficiaries of the status of their rights and obligations. Any such notice would be incapable of addressing the basic questions that anyone in a beneficiary's situation would need to have answered. To put it simply: Are the benefits granted or denied? Has a decision been taken or deferred? Can the money be used for other purposes or must it be put aside lest the Appeals Council, four years hence, decide that the ALJ made an error of fact or law?

In view of the serious substantive and procedural due process problems that would result from the Secretary's reading of the regulations, we conclude that they should be interpreted as allowing reopening only on the basis of motions by claimants. We note that the Social Security Act, under whose authority the regulations were promulgated, is a remedial statute, to be broadly construed and liberally applied in favor of beneficiaries. *See, e.g., Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir.1975). We find that it would frustrate congressional objectives in passing such a statute if the ambiguity in the regulations were to be resolved in favor of putting claimants in a state of limbo for at least four years, uncertain of the final outcome of their cases. In effect, the Secretary seeks to interpret § 404.987's statement that "you," the claimant, may seek reopening as meaning that "we," the Appeals Council, may do so as well. This interpretation results in lack of finality and in the issuance of inevitably misleading notices constructed through selective quotation of ambiguous regulations. This significantly negates the beneficent purposes of the statute.

We do not think that our holding will result in large-scale overpayments to ineligible claimants. We note, first, that the procedures of determination, reconsideration, ALJ hearing and Appeals Council "review" do, in the normal course, afford those responsible many opportunities for correcting any errors they may have made. Moreover, the regulations contain provisions allowing for adjustment or termination of benefits in the event that the claimants' circumstances change. *See, e.g.,* 20 C.F.R. §§ 404.415 & 404.1595. Finally, in cases where the claimant is at *fault,* the regulations provide for adjustment and recovery of Title II and Title XVIII overpayments. *See* 20 C.F.R. §§ 404.501–515.

Nor do we find that our holding necessarily conflicts with the history of the regulations. Prior to 1980, the regulations clearly gave the Appeals Council the right to reopen on its own initiative after the sixty-day time limit. *See* 20 C.F.R. §§ 404.-956–957 (1978). The legislative history to the 1980 revision of the regulations suggests that "no substantive changes have been made," although "several provisions have been clarified." *See* 45 Fed.Reg. 52078 (1980). It is striking, however, that the provision granting the Appeals Council its extraordinary *sua sponte* reopening power was omitted from the current regulations.

Thus, the recodification of the regulations in 1980 enables us to interpret them in a way that comports with due process. In our consideration of the current regulations, we apply an established rule of statutory construction that provisions susceptible of more than one meaning

should be interpreted so as to be constitutional. *See, e.g., NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 500, 99 S.Ct. 1313, 1318, 59 L.Ed.2d 533 (1979). Based on principles of due process of law, and in view of the beneficent purposes of Congress in passing the Social Security statute authorizing the regulations, we find that 20 C.F.R. §§ 404.987–989 should be interpreted as allowing reopening only on the motion of claimants. Accordingly, the reopening of appellee McCuin's case was improper.

*Affirmed in part, reversed in part and remanded.*

Costs to appellee.