**Virginia KNIGHT, on behalf of herself and all other persons similarly situated, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, et al., Defendants.**

**Anna O'MALLEY, on behalf of herself and all other persons similarly situated, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, et al., Defendants.**

**Alexandria CURNOW, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**Civ. A. Nos. 80–892–K, 80–2088–K and 85–224–K.**

United States District Court, D. Massachusetts.

June 30, 1987.

Laura M. Rosenthal, Lead Counsel, Mass. Law Reform Institute, Audrey Zucker, Greater Boston Legal Services, Boston, Mass., Peter Benjamin, Western Mass. Legal Services, Springfield, Mass., for Virginia Knight.

Garrick F. Cole, Asst. Atty. Gen., Boston, Mass., Lisa Levy, for State defendant.

Jeff Robbins, Asst. U.S. Atty., Boston, Mass., for Federal defendant.

Mark Coven, Greater Boston Elderly Legal Services, Audrey Zucker, Greater Boston Legal Services, Boston, Mass., for Anna O'Malley.

Joan C. Stoddard, Office of the Atty. Gen., Boston, Mass., Patti Saris, Asst. U.S. Atty., for Patricia R. Harris, Secretary of Health, Educ. and Welfare, John Pratt, Com'r of the Dept. of Public Welfare of the Com. of Mass.

Peter Benjamin, W. Mass. Legal Services, Springfield, Mass., for Alexandria Curnow.

Henry L. Rigali, Asst. U.S. Atty., for Secretary of Health and Human Services.

KEETON, District Judge.

By agreement of the parties, this case was submitted to the court for decision based upon the administrative record and the parties' recent submissions, (Docket Nos. 49, 50, 53, 56, and 57). This case arose from the decision by the defendant, the Secretary of Health and Human Services ("Secretary"), to reduce the Supplementary Security Income grants received by the plaintiffs and the members of the class they represent which was certified by Or-

der of this court dated November 24, 1986. At issue is the Secretary's policy, first implemented in 1977, of recalculating the amounts, fixed in January of 1974, of the plaintiffs' Minimum Income Levels (MIL). Plaintiffs contend that the practice of reexamining benefit determinations and reducing the corresponding benefit payments violates the Secretary's regulations, the Social Security Act ("the Act"), and the due process clause of the Fifth Amendment. Accordingly, they urge this court to enter an order:

(1) enjoining any MIL reductions, after January 1, 1976, for reasons other than fraud, changes in 'special needs or circumstances,' or receipt of food stamps;

(2) requiring the Secretary to reinstate class members' higher MIL levels; and

(3) requiring the Secretary to reimburse class members for benefits erroneously reduced, including overpayments recouped as a result of the MIL reductions.

Memorandum in Support of Plaintiffs' Motion for Judgment on Class Issues at 51–52 (Docket No. 50).

Plaintiffs do not now press the issues pertinent only to the claims brought in their individual capacities, but reserve their rights to assert these claims in later proceedings.

## I.

This case has its genesis in the assumption by the federal government of primary responsibility for the support of the blind, aged, and disabled in the Commonwealth of Massachusetts. Until 1974, each state administered its own program of aid to the blind, aged and disabled and each was partially reimbursed by the federal government pursuant to Titles I, X, XIV, and XVI of the Social Security Act. In January of 1974, the state programs were brought under the auspices of the federal government which chose to administer this aid through the Supplemental Security Income (SSI) program, 42 U.S.C. § 1302 *et seq.* In connection with the transfer of responsibility for the aid programs, Congress sought to address the problem posed by the fact that the difference in the schemes for calculating both eligibility for and the amount of benefits created the danger that certain individuals would suffer a decrease in their benefit levels. Congress responded to this problem by "grandfathering" the benefit levels of the recipients of aid under the state program; the recipients were guaranteed that their Minimum Income Level ("MIL") under SSI would equal their "December, 1973 income" under their respective state programs. Pub.L. No. 93–66 § 212 (reprinted as a note to 42 U.S.C.A. § 1382). The amount of the recipient's MIL was to be determined by adding the recipient's December 1973 state benefit and the recipient's other December 1973 income.

The federal government did not undertake full fiscal responsibility for maintaining the MIL. Instead, it required the states to provide, as a condition for reimbursement under Title XIX of the Social Security Act, supplementary benefits ("mandatory supplements") which were, for Massachusetts citizens, issued as part of the monthly SSI benefits checks. Agreement Between the Secretary of Health, Education and Welfare and the State of Massachusetts at 5.

The amount of the mandatory supplement awarded to each recipient was to equal the difference between the recipient's MIL and the sum of the recipient's SSI benefit and the recipient's other income. The words "other income" refer to income that would have been counted by the state in 1973 under the rules of the state aid program or state countable income ("SCI"), 20 C.F.R. §§ 416.2050(a)(1), 416.2050(b)(2). As plaintiffs correctly state, "the formula for mandatory supplementation, simplified to address only the factors relevant [to this case], is as follows:

$$\text{December 1973 Grant} + \text{Other Income}$$
$$- \quad \underline{\text{Current SSI} + \text{Other Income}}$$
$$= \quad \text{Mandatory State Supplement"}$$

Memorandum in Support of Plaintiff's Motion for Judgment on Class Issues, at 4.

Although the Secretary's regulations provided for the use of SCI in the calculation of the Minimum Income Level, the Secretary did not use SCI to determine the

MIL of Massachusetts residents. Instead, the Secretary used the income counting rules of the new SSI program, sometimes called federal countable income ("FCI"). Memorandum from Associate Commissioner dated August 30, 1977 (Plaintiffs' Appendix D, Ex. 1). The MILs calculated using FCI remained in place until early 1977.

In early 1977, the Secretary began a systematic reexamination of those cases where the Secretary expected that the use of SCI in determining the MIL was likely to produce a different result from the use of FCI. In connection with this reexamination, the Secretary asked the Commonwealth of Massachusetts to review the conversion data of these selected recipients for accuracy and requested the state to recalculate MILs using SCI rather than FCI to determine the value of December 1973 Other Income. Pursuant to these accuracy reviews and the recalculations the Secretary reduced the MILs calculated in 1974 and ordered a corresponding reduction in the mandatory supplements of many Massachusetts residents.

## II.

Named plaintiffs Virginia Knight and Anna O'Malley filed separate class action complaints in which they challenged, among other things, the Secretary's policy of reexamining and reducing the MIL determinations made in January of 1974.

Mrs. Knight received assistance from the Massachusetts Old Age Assistance Program ("MOAA") until January 1974 when the federal government, through SSI, assumed responsibility for her benefit payments. At that time, as stated in the November Memorandum, the Secretary deemed Mrs. Knight's December 1973 MOAA income to be her MIL.

On April 26, 1979, Mrs. Knight received a notice from the Secretary that her SSI benefit was being reduced; the Secretary had determined that her MIL had been incorrectly computed in 1974. Administrative Law Judge's ("ALJ") Decision at 8 (November 8, 1979). On November 14, 1979, there was a hearing before an ALJ on the issue of the reduction of Mrs. Knight's SSI benefits and the ALJ upheld the decision. *Id.* The Appeals Council later denied Mrs. Knight's request for for review. Thus, the decision of the Secretary became final. Although Mrs. Knight died since commencing the proceedings in this court, dismissal of her claims has been deferred pending the outcome of this class action; the facts of her case were considered helpful to decision.

Plaintiff O'Malley is 93 years old. *See* ALJ's Decision at 10 (May 5, 1980). Like Mrs. Knight, Mrs. O'Malley is a former recipient of MOAA benefits. *Id.* At the time that the benefit payments to Mrs. O'Malley were assumed by the Secretary, her December 1973 income was deemed her MIL. *Id.* On April 13, 1979, Mrs. O'Malley received a Notice of Planned action which informed her that her "protected payment level" was incorrect and that her SSI check would be reduced accordingly. Like Mrs. Knight, Mrs. O'Malley requested and received a hearing before an ALJ, who affirmed the initial determination. She then appealed to the Appeals Council, which denied review of her claim and prompted her petition for relief in the district court.

On January 26, 1981, after the Secretary was unable to produce a complete administrative record, the district court remanded the case for further development. After a new hearing in which the original decision was reaffirmed, Mrs. O'Malley sought review in the Appeals Council which again denied her claim, and the decision of the Secretary became final.

## III.

The upshot of plaintiffs' claim is that the Secretary's rules of administrative finality apply to this case and that the Secretary has violated these rules. For the reasons stated below, I conclude that plaintiffs are entitled to judgment on this claim.

■ Before addressing the question whether the Secretary has violated his regulations on finality, I consider first whether these rules apply to the issues at hand.

These rules, found at 20 C.F.R. § 416.1477 *et seq.* (revising without substantively changing 20 C.F.R. § 416.1477 *et seq.* (1978)), clearly define the conditions under which the Secretary may reopen a determination bearing on a claimants entitlement to or amount of benefits. The Secretary contends, in essence, that these regulations are inapplicable, because the Secretary did not reopen and revise the initial determinations made in 1974, but instead made a new determination bearing on plaintiffs' continuing eligibility as he is from time to time required to do. Memorandum in Support of the Secretary's Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment at 16 (Docket No. 53). This contention must be rejected.

The 1974 MIL determinations, as the Secretary concedes, were initial determinations subject to the finality rules; they were determinations about (1) plaintiffs' eligibility for benefits and (2) the level of benefits plaintiffs were to receive. *See* 20 C.F.R. § 416.1400(1). Nevertheless, the Secretary contends that he is free to issue new determinations on issues decided in the 1974 determinations in order to ensure that individuals receive the correct amount of benefits as long as these new determinations are not applied retroactively to the date of the 1974 initial determinations. *Id.* at 17. Although the Secretary's "interpretation of his own regulations is to be given considerable weight ... [t]his interpretation ... must be reasonable in view of the language of the regulations and the policies they were meant to implement." *McCuin v. Secretary of Health and Human Services,* 817 F.2d 161, 168 (1st Cir.1987). I conclude that I must reject the assertion of statutory and regulatory authority to make new determinations, "to be prospectively applied", on issue of plaintiffs MILs determined in 1974. The contention advanced by the Secretary is clearly inconsistent with the regulations governing finality, the policies underlying those regulations, and the regulations governing the continuing duty to monitor a claimant's eligibility.

Although the Secretary contends that the examinations, beginning in 1977, of MILs were not reopenings, there appears to be no analytical distinction between this "new determination" and a reopening, under 20 C.F.R. § 1416.1487, of the earlier determinations bearing upon the plaintiffs' MILs. To be sure, the word "reopening" is not defined anywhere in the regulations. However, its meaning may easily be inferred from the regulatory context. As used in 20 C.F.R. § 1416.1487 *et seq.,* the word "reopen" refers to the process of reexamining, with or without the benefit of additional material evidence, issues decided in a determination that has become final. In this case the Secretary did no more than reexamine issues decided in 1974. Indeed, the Secretary makes no allegation that he took the additional step of supplementing the records in the cases of the named plaintiffs or in any other case with evidence material to the issue of plaintiffs' MILs. In short, the only difference between a reopening and what the Secretary characterizes as a "new determination" is the form of words used to describe the procedure.

The Secretary's decision to apply the reexamined MIL determinations prospectively does not change the fact of reopening the earlier decision. When the Secretary decided to adjust the plaintiffs' MILs he made in effect three decisions each subject to the rules limiting reopening and revising determinations. 20 C.F.R. § 416.1402. First, he determined that the computations using FCI were incorrect and recalculated the claimants' MIL using SCI. The recalculations revealed that plaintiffs had been paid a higher amount of benefits than that to which they were entitled. Second, the Secretary determined, by implication, that the claimants would not be required to repay the overpaid benefits. Third, the Secretary decided that the claimants' benefits should be reduced to reflect the MIL calculated using SCI. Each of these decisions is, by definition, an initial determination analytically independent from the others. *See* 20 C.F.R. § 416.1402. The fact that the Secretary chose not to request repayment does not change the fact that the recalculation of the plaintiffs' MIL nec-

essarily involved a reexamination, hence a redetermination, of issues decided in 1974. To assert that the question whether the Secretary has reopened a case turns on whether the Secretary takes an action from which a claimant is not likely to appeal— i.e., the decision not to seek reimbursement for overpaid benefits—is to attempt to render illusory the guarantees of finality.

Except for the regulations concerning reopening, the Secretary has identified nothing in either the Social Security Act or the regulations that would authorize him to make a new decision on an issue previously decided. The Secretary contends that both the Social Security Act, 42 U.S.C. § 1382(c)(1), and the regulations promulgated pursuant to the Act authorize him to review periodically the eligibility of claimants. The regulations to which the Secretary refers oblige the Secretary to review case files to determine whether claimants remain eligible for benefits, but do not give the Secretary authority to review case files to determine whether plaintiffs were ever eligible or to review case files to determine whether past facts, such as claimant's December 1973 income, were determined accurately. *See* 20 C.F.R. §§ 1416.204, 1416.-988–1416.989. I conclude, therefore, that the Secretary's decision to review and correct the 1974 MIL determinations was in fact a reopening.

### IV.

■ I turn next to the question whether the challenged reopenings were appropriate under the Secretary's rules concerning administrative finality, 20 C.F.R. §§ 1416.-1487–1416.1489. Plaintiffs must prevail if the Secretary failed to follow his own rules when he reopened and revised the MIL determinations of January 1974. *See United States v. Nixon*, 418 U.S. 683, 694–96, 94 S.Ct. 3090, 3100–01, 41 L.Ed.2d 1039 (1974); *See generally*, 2 K. Davis, Administrative Law § 7:21 (1979). Considered in light of these regulations, the reopenings that gave rise to this suit suffer from two independent flaws, one of which is fatal to all of the challenged reopenings, while the other is fatal only to those reopenings that took place after 1979.

### A. Limitation Period

The first of the two flaws in the Secretary's program of reopening and revising MIL determinations is found in its timing. Even if the Secretary were entitled to reopen cases on his own motion after the 60–day review period has elapsed, the reopenings here were untimely. Section 404.-1488 provides a three-tiered system for determining whether a case may be reopened:

A determination, revised determination, decision, or revised decision may be reopened—

(a) Within 12 months of the date of the notice of the initial determination for any reason;

(b) Within two years of the date of the notice of the initial determination if we find good cause, as defined in § 1416.89, to reopen a case; or

(c) At any time if it was obtained by fraud or similar fault.

### B. Sua Sponte Reopening

■ The second of the two flaws is revealed on study of the first circuit's recent decision in *McCuin* that only the Social Security claimant may request the reopening of a case in which the Secretary has reached final decisions once the 60–day period in which the appeals council may initiate review *sua sponte* has expired. *McCuin*, at 174–75 (interpreting 20 C.F.R. § 404.987). Although the circuit court was interpreting the finality regulations for grants distributed pursuant to the Federal Old–Age, Survivors and Disability Insurance program, the finality regulations applicable to this case are identical in all respects pertinent to the issues in this suit. *Compare* 20 C.F.R. §§ 404.969–404.970, 404.987–404.989 *with* 20 C.F.R. §§ 416.-1469–416.1470, 416.1487–416.1489. In short, *McCuin* is directly in point. Accordingly, I conclude that only the Supplemental Security Income claimant may request the reopening of a file after the expiration of the 60–day period in which the Appeals Council may initiate review of the file on its own motion. I note, as did the circuit

court in *McCuin*, that prior to 1980 the regulations clearly gave the Secretary authority to reopen final decisions at any time after the 60–day period had elapsed. 20 C.F.R. § 416.1456 (1978); *McCuin*, at 174. As a result, this ground for decision applies only to those class members who suffered a reduction in benefits due to an MIL determination that took place after 1979.

The Secretary's program of reopening and revising MIL determinations clearly falls outside of the time limits set forth in the foregoing section; the reopenings were first undertaken more than two years after the initial determinations were made and the defendants have made no allegations that any of the plaintiffs were at fault in the allegedly erroneous determinations, much less fraudulently responsible for the Secretary's alleged error.

### V.

The Secretary has raised the concern that the rejection of its reopening will result in incorrect payments to the plaintiffs and will impose a substantial administrative burden on the Department. I conclude that neither of these concerns is an appropriate ground for denying plaintiffs the requested relief. First, there is no guarantee that the 1978–79 MIL determinations using SCI and made on the basis of stale evidence contained in state files will reflect claimant's December 1973 income any more accurately than calculations made in January 1974 using FCI rather than SCI. Indeed, plaintiff Knight's experience suggests that the recalculation process itself was fraught with inaccuracies and errors stemming from the fact that the recalculation process (1) was based on data that were both incomplete (Knight Tr. 204) and subject to misinterpretation (*id.* at 217) and (2) was carried out on the basis of erroneous assumptions (Knight Tr. 309). Second, the burden of remedying his wrongful actions, even if requiring a more substantial expenditure of effort than was involved in instituting the initial review, should not absolve the Secretary of the obligation to make amends.

### VI.

For the foregoing reasons, I conclude that plaintiffs are entitled to judgment on the issues raised in the consolidated class actions. The Secretary will be enjoined from reopening MIL determinations made in 1974 and will be ordered to reinstate benefits of all those members of the plaintiff class who have suffered a reduction in benefits attributable to the Secretary's program of recalculating MILs.